145 P.3d 1185 (2006)
Kimberly GOURLEY, Respondent,
v.
Clifford GOURLEY, Petitioner.
No. 76270-8.
Supreme Court of Washington, En Banc.
Argued September 15, 2005.
October 26, 2006.
*1186 Howard K. Todd, Attorney at Law, Seattle, WA, for Petitioner.
Susan Delanty Jones, Laura Kristine Clinton, Preston Gates & Ellis LLP, David Scott Law, Skellenger Bender, Seattle, for Respondent.
Margaret T. Sassaman, King County Superior Court, Seattle, WA, Leslie Woodruff Owen, Northwest Justice Project, Olympia, WA, for Amicus Curiae on behalf of Northwest Justice Project.
Grace S. Huang, Wa. State Coalition Against Dom. Violence, Seattle, WA, for Amicus Curiae on behalf of Washington State Coalition Against Domestic Violence.
Bryan Patrick Harnetiaux, Attorney at Law, Debra Leigh Williams Stephens, Attorney at Law, Spokane, WA, Catherine Wright Smith, Edwards Sieh Smith & Goodfriend PS, Seattle, WA, for Amicus Curiae on behalf of Washington State Trial Lawyers Assoc. Foundation.
J.M. JOHNSON, J.
¶ 1 N. Gourley accused her father, Clifford Gourley, of sexual assault. As a result, N.'s mother, Kimberly Gourley,[1] sought and received a domestic violence protection order against Mr. Gourley, prohibiting contact between Mr. Gourley and herself and their three children  14-year-old N., 14 year-old D., and 10-year-old K. On appeal, Mr. Gourley argues that in granting the petition for protection order, the commissioner improperly considered hearsay evidence and violated his due process rights when he refused to allow cross-examination of N.
¶ 2 We reject Mr. Gourley's hearsay challenge because ER 1101(c)(4) allows courts to consider hearsay in protection order proceedings. We also reject Mr. Gourley's due process argument as all requisite procedures were followed. The facts of Mr. Gourley's case did not require cross-examination  although we note that allowing such cross-examination would not have been error.

I. FACTS AND PROCEDURAL HISTORY
¶ 3 In February 2003 the Gourley's neighbor reported to Child Protective Services (CPS) that N. and K. had disclosed that Mr. Gourley had sexually and physically abused them. However, when first interviewed by CPS, both girls denied the allegations.
¶ 4 During the subsequent investigation, N. described to a detective "multiple incidents of sexual touching" in which her father "rubbed her vaginal area both over and under her clothing on several occasions." Clerk's Papers (CP) at 39, 162. N. told the detective that before the CPS interview her father had convinced her to lie. N. also admitted to her mother and her personal *1187 counselor that she had in fact been abused by Mr. Gourley.
¶ 5 Mr. Gourley admitted to the detective that he applied aloe vera to N. while she was naked, including her bare breasts, but denied any sexual intent. He told the detective that there may have been other times when he touched N.'s breasts. He acknowledged that it was wrong to do so and admitted that he needed counseling. The detective also reported that Mr. Gourley admitted "cautioning" N. before the interview with CPS, at which she denied the charges.
¶ 6 In April 2003 Ms. Gourley petitioned for a domestic violence protection order on behalf of herself and her children against Mr. Gourley. The petition explained that N. reported that her father had sexually assaulted her from November 2001 to March 2003. The petition was later supported by the declarations of Ms. Gourley, N.'s personal counselor, the investigating officer, and N. herself. In N.'s declaration, she expressed fear of continued sexual abuse.
¶ 7 While Mr. Gourley denied sexually abusing N., in his declaration he admitted the following:
one night (last summer) when I was in bed, nearly asleep, [N.] had come into our bedroom and asked me to put aloe vera on her sunburn. I did, while she stood next to the bed. She didn't want lotion on her clothes, so she took them off. Just as I was finishing, [K.] came downstairs looking for a decongestant, so I left N. and helped K. find a decongestant in the kitchen. [N.] put her clothes on and joined us in the kitchen.
CP at 138-39.[2]
¶ 8 The hearing on the petition was continued twice at the request of Mr. Gourley, and he was allowed to depose Ms. Gourley. Mr. Gourley's counsel also submitted a prehearing memorandum in which he argued that N.'s statements to third parties were inadmissible hearsay and could not be admitted without cross-examination. However, Mr. Gourley made no attempt to subpoena N.
¶ 9 Prior to the hearing, Mr. Gourley was formerly charged by information filed in the Superior Court of Snohomish County with child molestation in the second degree.
¶ 10 At the hearing, Mr. Gourley's counsel repeated his argument that the evidence was insufficient "without direct, nonhearsay testimony from [N.] which is subject to cross-examination." Report of Proceedings (RP) at 19. The commissioner expressed concern about allowing cross-examination of a victim in a civil case when a criminal charge was pending and explained that he would not allow cross-examination of a minor victim without giving the prosecutor an opportunity to object.
¶ 11 The commissioner found that an act of domestic violence had occurred  that it was more likely than not that inappropriate touching by Mr. Gourley of N. had occurred. The commissioner granted the protection order but made it "subject to revision and subject to the dissolution action."
¶ 12 Mr. Gourley filed a motion for revision of the commissioner's ruling with the superior court. The superior court denied Mr. Gourley's motion finding that the "records submitted by defendant constitute sufficient facts on which to order the [domestic violence protection order]." CP at 14. Mr. Gourley appealed to the Court of Appeals. The Court of Appeals affirmed the commissioner's issuance of the protection order. In re Gourley, 124 Wash.App. 52, 55, 98 P.3d 816 (2004).

II. ANALYSIS
A. ER 1101
¶ 13 Mr. Gourley argues that the commissioner improperly relied on hearsay evidence. This argument fails because ER 1101(c)(4) allows courts to consider hearsay in a chapter 26.50 RCW protection order proceeding.
¶ 14 Interpretation of a court rule is a question of law, subject to de novo review. Nevers v. Fireside, Inc., 133 *1188 Wash.2d 804, 809, 947 P.2d 721 (1997). In determining the meaning of a court rule, we apply the same principles used to determine the meaning of a statute. City of Bellevue v. Hellenthal, 144 Wash.2d 425, 431, 28 P.3d 744 (2001). Foremost, we consider the plain language of the rule and construe the rule in accord with the intent of the drafting body. See id. If the rule's meaning is plain on its face, the court must give effect to that plain meaning as an expression of legislative intent. Arborwood Idaho, L.L.C. v. City of Kennewick, 151 Wash.2d 359, 367, 89 P.3d 217 (2004).
¶ 15 ER 1101 discusses the applicability of the evidence rules in various proceedings in Washington, including protection order proceedings:
(c) . . . The rules (other than with respect to privileges) need not be applied in the following situations:
. . . .
(4) Applications for Domestic Violence Protection. Protection order proceedings under RCW 26.50 and 10.14. When a judge proposes to consider information from a domestic violence database, the judge shall disclose the information to each party present at the hearing; on timely request, provide each party with an opportunity to be heard; and, take appropriate measures to alleviate litigants' safety concerns. The judge has discretion not to disclose information that he or she does not propose to consider.
¶ 16 The plain language of the rule indicates that the rules of evidence need not be applied in protection order proceedings.[3] ER 1101(c)(4); see also Hecker v. Cortinas, 110 Wash.App. 865, 870, 43 P.3d 50 (2002) (finding that "the rules of evidence, including the hearsay rule, need not be applied in protection order proceedings under chapter 26.50 RCW."). Therefore, the commissioner did not err when he considered hearsay evidence.
B. Due Process
¶ 17 Mr. Gourley next argues that his due process rights were violated when the commissioner refused to allow testimony from and cross-examination of N. at the hearing. Because Mr. Gourley does not argue that chapter 26.50 RCW is facially unconstitutional, we only address whether his due process rights were violated under the specific facts of this case. We hold that they were not.
¶ 18 "The fundamental requirement of due process is the opportunity to be heard `at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). Due process is a flexible concept in which varying situations can demand differing levels of procedural protection. Id. at 334, 96 S.Ct. 893. In evaluating the process due in a particular circumstance, we must consider (1) the private interest impacted by the government action, (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) the government interest, including the additional burden that added procedural safeguards would entail. Id. at 335, 96 S.Ct. 893.
¶ 19 In the present case, Mr. Gourley claims a fundamental right to make decisions concerning the care, custody, and control of his children. See Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). However, the possible length of the deprivation of the interest is also an important factor in the Mathews test. Mathews, 424 U.S. at 341, 96 S.Ct. 893. Thus, we must consider that Mr. Gourley's right was only temporarily restrained by the protection order. On its face, the duration of the protection order was only one year, and the order was further subject to orders issued in the dissolution action.
¶ 20 While Mr. Gourley has an important interest in the care, custody, and control of his children, the government has a compelling interest in preventing domestic violence or abuse. RCW 26.50.035 Findings  1993 c 350 ("[D]omestic violence is a problem of *1189 immense proportions affecting individuals as well as communities . . . [It costs] lives as well as millions of dollars each year . . . for health care, absence from work, and services to children."). To balance these two interests we must consider the procedures employed by the government and determine the risk that Mr. Gourley's interest was erroneously deprived.
¶ 21 The due process requirements of being heard at a meaningful time and in a meaningful manner are protected by the procedures outlined in chapter 26.50 RCW (which Mr. Gourley did not challenge as being unconstitutional). Chapter 26.50 RCW provides the following procedural protections: (1) a petition to the court, accompanied by an affidavit setting forth facts under oath, (2) notice to the respondent within five days of the hearing, (3) a hearing before a judicial officer where the petitioner and respondent may testify, (4) a written order, (5) the opportunity to move for revision in superior court, (6) the opportunity to appeal, and (7) a one-year limitation on the protection order if it restrains the respondent from contacting minor children. See State v. Karas, 108 Wash.App. 692, 699-700, 32 P.3d 1016 (2001); chapter 26.50 RCW.
¶ 22 Here, the above procedures were followed and Mr. Gourley does not argue otherwise. Moreover, the commissioner, exercising his discretion, allowed Mr. Gourley the further procedural protection of additional discovery in that Mr. Gourley was permitted to subpoena and depose Ms. Gourley.[4] CP at 48-50.
¶ 23 Despite this, Mr. Gourley argues that chapter 26.50 RCW requires the additional procedural protection of cross-examination. Mr. Gourley bases this argument on language in RCW 26.50.020 and RCW 26.50.070(1), (4) that refers to a "full hearing" necessary before a one-year protection order can be entered. CP at 48-50.
¶ 24 RCW 26.50.020 deals with the jurisdiction of district and municipal courts in protection order proceedings and explains that when the district or municipal court jurisdiction is limited to issuance of a temporary order, the court must "set the full hearing provided for in RCW 26.50.050 in superior court and transfer the case." RCW 26.50.020(5). RCW 26.50.070(1) explains that where appropriate, the court can grant an ex parte temporary order for protection, "pending a full hearing." "A full hearing, as provided in this chapter, shall be set for not later than fourteen days from the issuance of the temporary order. . . ." RCW 26.50.070(4).
¶ 25 However, no section of chapter 26.50 RCW explicitly sets forth the form the hearing must take or defines what is meant by "full hearing." When the term is used, it is juxtaposed against the "ex parte" hearing necessary for a temporary protection order. RCW 26.50.020, .070(1), (4). Therefore, nothing in the statutory scheme explicitly requires a trial judge to allow the respondent in a domestic violence protection order proceeding to cross-examine a minor who has accused him of sexual abuse.
¶ 26 Here, the commissioner did not abuse his discretion when he determined that cross-examination was unnecessary. The commissioner had ample evidence with which to make his determination, including Mr. Gourley's admission that he rubbed aloe vera on N.'s naked body. CP at 138. Thus, the need to cross-examine N. was obviated because Mr. Gourley himself confirmed N.'s declaration. Mr. Gourley's due process rights were not violated.
¶ 27 While the facts of this case did not require testimony or cross-examination, live testimony and cross-examination might be appropriate in other cases. Our analysis here is limited to the facts of this case.
C. Attorney Fees
¶ 28 The Court of Appeals awarded attorney fees to Ms. Gourley. Gourley, 124 Wash.App. at 59, 98 P.3d 816. Ms. Gourley did not specifically renew her request of attorney fees to this court. However, pursuant to RAP 18.1(b),[5] we consider the request *1190 for fees to be a continuing request and affirm the award of fees to Ms. Gourley.

III. CONCLUSION
¶ 29 The legislature has carefully enacted protection order procedures in the hope of protecting the important interests implicated. Judges and commissioners must exercise discretion to determine whether cross-examination is necessary in a particular case to protect the rights involved; their judgment is crucial in such delicate proceedings. We affirm the Court of Appeals.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, Justice CHARLES W. JOHNSON, Justice SUSAN OWENS.
MADSEN, J. (concurring).
¶ 30 I would hold that a "full hearing" under chapter 26.50 RCW includes the right to cross-examine adverse witnesses. Additionally, I would hold that under the Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), balancing test, due process requires the opportunity to cross-examine in a full hearing for a one-year order of protection within the limitations of the applicable evidence rules.
¶ 31 In this case, however, neither Mr. nor Ms. Gourley subpoenaed N. to testify. ER 1101(c)(4) permits the court to consider hearsay in a protection order proceeding under chapter 26.50 RCW. Thus, because N. was not subpoenaed, and the trial court was authorized to consider hearsay statements made by N., I agree with the result reached by the majority.
Justice MARY E. FAIRHURST, concurs.
CHAMBERS, J. (concurring).
¶ 32 I concur with Justice Madsen that due process may require an opportunity for cross-examination before a one year protective order may be issued. I disagree, however, that the respondent waived his right to cross-examine an adverse witness by failing to subpoena her under the facts of this case. As the dissent demonstrates, the commissioner hearing the case made it quite clear that he did not want the child to testify. Dissent at 1194. Once an appropriate objection is on the record, it is not necessary for lawyers or parties to continually incur the wrath of the trier of fact in order to preserve the matter for review.
¶ 33 However, I agree with the majority that there was sufficient uncontested evidence, including the father's own admissions, to justify the protective order. The fact that a father either concedes or does not contest that he put lotion on an intimate part of the body of his 13-year-old daughter is sufficient under the circumstances. Whether or not there was sexual motivation is immaterial for the purposes of this protective order. The commissioner had sufficient ground based upon the admission and the other uncontested statements of the father to issue the protective order. Majority at 1189. Thus I concur that the respondent has not established ground for relief.
QUINN-BRINTNALL, J.[*] (concurring).
¶ 34 A father inappropriately touched his daughter and his family disintegrated. The matter was reported to law enforcement for prosecution and criminal charges were filed. The mother filed for dissolution of the couple's marriage and sought a domestic violence protection order prohibiting the father from having contact with her and the couple's children.
¶ 35 At the hearing on the petition for a protection order, the father objected to the commissioner's consideration of the daughter's hearsay allegations. He argued that the court could not consider his daughter's statements without first allowing him to cross-examine her. The commissioner overruled the objection, expressing concern that permitting the father to cross-examine his daughter might have an adverse effect on the parallel criminal prosecution. The commissioner considered the father's and mother's *1191 evidence, including the daughter's sworn declaration, and issued the protection order.
¶ 36 I agree with the majority that ER 1101(c)(4) allows a court to consider hearsay in deciding whether to issue domestic violence protection orders under chapters 10.14 and 26.50 RCW. I also agree that chapter 26.50 RCW does not provide a right of cross-examination in these proceedings. Further, I agree that Clifford Gourley received sufficient due process during the protection order proceedings at issue here.
¶ 37 I respectfully write separately for two reasons. First, to express my concern with the commissioner's consideration of the impact N. Gourley's testimony might have on the pending criminal charges and his suggestion that the prosecutor should be present during the protection order hearing and second, to explore further the limits of the due process right to confrontation the dissent seeks to create.
¶ 38 Although courts with pending simultaneous proceedings must be mindful of the dangers and confusion caused by inconsistent orders,[1] the commissioner's responsibility here was to employ those procedures necessary to fairly adjudicate the protection order petition before him without regard to the impact such procedures might have on a related but collateral criminal proceeding. Requiring the prosecutor to attend protection order proceedings undermines the purpose of the statute. That purpose is to provide a simple direct process for victims of domestic violence to access the court and obtain the court's protection. Delaying a contested protection order hearing until a prosecutor can appear delays a domestic violence victim's access to justice and the court's protection. In my view, the better practice when faced with this situation is to first issue a temporary protection order under RCW 26.50.070 if the petitioner alleges that "irreparable injury" is imminent, and then transfer to the judge assigned the criminal case the more long term issue of restricting a criminal defendant's contact with family or household members, alleged victims, or potential witnesses. If the commissioner had followed that practice here, the judge hearing the criminal proceeding could have decided whether to issue a no-contact order prohibiting Gourley from contacting N., as the accuser, and other family members, as potential witnesses, during the pendency of the criminal case as a condition of release. CrR 3.2(d)-(e), (i)-(l). I note that in these proceedings the terms of a defendant's release can be amended at any time, and that in setting the terms of release, the court has the authority to consider hearsay and the defendant has no right to compel or cross-examine witnesses. See CrR 3.2(m); ER 1101(c)(3); see also State v. Kelly, 60 Wash. App. 921, 928, 808 P.2d 1150 (1991) (terms of pretrial release reviewed for abuse of discretion).
¶ 39 The second reason I write is to emphasize that the constitutional right of confrontation is explicitly limited to criminal prosecutions. U.S. Const. amend. VI; Wash. Const. art. I, § 22. It seems to me that if the framers intended this right to broadly reach the civil realm, they would not have so limited the constitutional text. We should thus be reluctant to find a due process right of confrontation in civil proceedings. When we do, it should be narrowly drawn, recognizing the competing interests of all the litigants involved. We must be wary of expansively creating rights that marginalize the sixth amendment to the United States Constitution and article I, section 22 of the Washington Constitution, and unintentionally limit the legitimate rights of other parties in civil proceedings, particularly where, as here, the State is not a party to the civil action.
¶ 40 The essence of due process is that a party in jeopardy of losing a constitutionally protected interest be given a meaningful opportunity to be heard. Mathews v. Eldridge, 424 U.S. 319, 333, 348, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). "[T]he hearing required is only one `appropriate to the nature of the *1192 case.'" Smith v. Org. of Foster Families for Equal. & Reform, 431 U.S. 816, 848, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). "`"[D]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.'" Gilbert v. Homar, 520 U.S. 924, 930, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997) (quoting Cafeteria & Rest. Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)). "`Due process is flexible and calls for such procedural protections as the particular situation demands.'" Gilbert, 520 U.S. at 930, 117 S.Ct. 1807 (quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)).
¶ 41 Here, the procedures the dissent would grant a respondent in protection order hearings are neither narrow nor flexible. They are nothing short of those protections required in a full criminal trial. In this case, the dissent would hold that Gourley had a constitutional right to cross-examine not only the petitioner, Kimberly Gourley, but N., the couple's other children, the investigative officer, the social worker, N.'s personal counselor, and maybe N.'s friend and the friend's father, to whom N. had disclosed the abuse. Beyond Gourley's case, the dissent would extend this broad trial right to any proceeding infringing on a parent's "right to live in his own home and the right to the care, custody, and control of his children." Dissent at 1194.[2] Logically, such a rule would force courts to require that children, among others, testify in any case in which contact, including custody and visitation, is at issue. I cannot concur in the creation of what I perceive to be new due process rights for the respondent in a civil domestic violence protection action.
¶ 42 To assess the appropriate level of due process that is constitutionally required, it is first necessary to consider the nature of a protection order hearing. We must consider not only the respondent's interests in protection order proceedings, but the petitioner's and government's interests as well. Mathews, 424 U.S. at 335, 96 S.Ct. 893. In my opinion, the dissent's analysis minimizes the State's interests and largely ignores the separate, independent interests of the petitioner and the children seeking court protection. The State has a compelling interest in protecting the victims of domestic violence and abuse. See Schall v. Martin, 467 U.S. 253, 264, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984). Likewise, those seeking court protection have a separate and independent right not to be revictimized by those they fear and seek protection from. Those who seek protective orders often face many hurdles just getting to the courtroom, let alone in securing the order. See Laws of 1993, ch. 350, § 1 (legislature's findings under RCW 26.50.035 on domestic violence and obstacles to securing protection orders); In re Marriage of Barone, 100 Wash.App. 241, 247, 996 P.2d 654 (2000). Petitioners are generally pro se, in need of immediate help, and unable to endure a lengthy trial-like proceeding. Those who initiate protection order proceedings are likely to experience a deterioration in their relationship with the person from whom they seek protection. In light of these issues and many others, the government has a compelling interest in protection order proceedings that are flexible and accessible, ensuring that petitioners are not discouraged from seeking such orders.
¶ 43 Turning to the facts of this case, Gourley deposed the petitioner, his wife, and he challenged her allegations and her assessment of N.'s accusations. Gourley did not ask the commissioner to appoint a guardian ad litem (GAL) in the protection order proceeding. As an independent officer of the court, a GAL could have interviewed the Gourley children and reported to the court. *1193 See RCW 26.12.010, .175. The commissioner had Gourley's declaration that was consistent with, though less inculpatory than, the admissions he made to law enforcement about inappropriately touching N.'s breasts on numerous occasions. And Gourley's admissions to law enforcement were consistent with N.'s allegations.
¶ 44 The court's protection order was not permanent. It was for one year, as limited by RCW 26.50.060, and importantly, the issuing court ordered that it be subject to immediate revision by the court hearing the dissolution action. The commissioner recommended that the judge handling the couple's dissolution appoint a GAL to assist it in deciding visitation and custody issues. Gourley had the opportunity for nearly immediate additional hearings to provide new evidence concerning the risk he posed to his wife and children and to modify the protection order accordingly.
¶ 45 In my view, the statutes and court rules governing issuance of domestic violence protection orders adequately protected Gourley's due process rights and I concur with the majority opinion affirming the decision of the Court of Appeals in this case.
SANDERS, J. (dissenting).
¶ 46 Ordering a man out of his home and denying him the society of his children for a year is not a trifling matter. To the contrary, the trial court's order targets our most sacred liberty without even affording this husband and father his legal entitlement to live testimony and searching cross-examination. And our majority turns its back to fundamental principles, undermining our justice system and allowing citizens to be abused by the State absent that process we are all due.
¶ 47 Clifford Gourley challenges a "domestic violence protection order" entered against him in Snohomish County Superior Court. He demonstrates the trial court failed to provide him with a "full hearing" under chapter 26.50 RCW and due process as well when it refused to allow the testimony and cross-examination of N., his child who had accused him of sexual assault. The majority rejects Mr. Gourley's right to cross-examination under either the statute or the Constitution. If a "full hearing" under chapter 26.50 RCW does not include the right to cross-examination, what does it include? Due process independently guarantees Mr. Gourley's right to cross-examine N., whose contradictory statements constitute the basis for abridging Mr. Gourley's domestic tranquility and parental rights.
A. Chapter 26.50 RCW
¶ 48 The Domestic Violence Prevention Act requires a "full hearing" before a protection order is issued. See RCW 26.50.020(5), .070. Because the act does not define the term "full hearing" we look to the dictionary to give these words their plain and ordinary meaning. Am. Cont'l Ins. Co. v. Steen, 151 Wash.2d 512, 519, 91 P.3d 864 (2004). Black's Law Dictionary defines "full hearing" as, "A hearing at which the parties are allowed notice of each other's claims and are given ample opportunity to present their positions with evidence and argument." BLACK'S LAW DICTIONARY 738 (8th ed.2004). Webster's Dictionary defines "full" as "enjoying or possessed of all recognized or authorized prerogatives, rights, and privileges: not temporary, substitute, or provisional." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 919 (2002). And "hearing" is therein defined as "opportunity to be heard or to present one's side of a case." Id. at 1044. Words in a statute are not superfluous. Steen, 151 Wash.2d at 521, 91 P.3d 864. "Full" must be read as modifying "hearing" to indicate the legislative intent of affording parties all procedural rights, including the right to cross-examine adverse witnesses.
¶ 49 But here the "hearing" was decided on affidavits alone, without any live testimony much less cross-examination. The trial court dismissed Mr. Gourley's argument that credibility judgments could not be made without hearing testimony, stating credibility determinations could be made by "look[ing] at the entire history of the family dynamic," in particular "the sexual abuse that occurred within the home not by [Mr. Gourley] but by his son, under a pattern of, I guess, intimidation, you know, secrecy, and suppression." 1 Verbatim Report of Proceedings (VRP) at *1194 28-30. But the conviction referenced by the trial court did not involve either Mr. Gourley or N. To the contrary, although N. had accused her stepbrother of abuse, the prosecutor brought no charges because N. had also made contradictory statements.
¶ 50 The majority states, "Mr. Gourley made no attempt to subpoena N." Majority at 1187. However Mr. Gourley did argue before the trial court "there [was] an insufficient factual basis for [the] Court to determine that an order should issue without direct, nonhearsay testimony from [N] which is subject to cross-examination." 1 VRP at 19. The trial court specifically addressed the issue of "[w]hether [N], the minor, should be here to be under cross-examination," 1 VRP at 23, concluding "I wouldn't allow the cross-examination. . . . I mean, I wouldn't allow the cross-examination when a criminal charge is pending." 1 VRP at 24. N. did not testify and was not cross-examined because the trial court ruled against Mr. Gourley and not because he failed to act.
¶ 51 Here, the outcome hinged entirely on which set of N.'s statements the trial court found credible. And where the outcome hinges on the determination of the credibility of a party or witness "it may often be preferable for the superior court judge or commissioner to hear live testimony of the parties or other witnesses." In re Marriage of Rideout, 150 Wash.2d 337, 352, 77 P.3d 1174 (2003).
B. Due Process
¶ 52 The trial court also violated Mr. Gourley's due process rights when it resolved the disputed issues of fact and witness credibility on the basis of affidavits and declarations alone. "We review constitutional challenges de novo." State v. Cubias, 155 Wash.2d 549, 552, 120 P.3d 929 (2005). "The fundamental requirement of due process is the opportunity to be heard `at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). To determine the parameters of due process in a particular case we consider (1) the private interest affected, (2) the risk of erroneous deprivation of that interest through existing procedures, and (3) the governmental interest in the added fiscal and administrative burden that additional process would entail. Nguyen v. Dep't of Health, 144 Wash.2d 516, 526, 29 P.3d 689 (2001) (citing Mathews, 424 U.S. at 335, 96 S.Ct. 893).
¶ 53 Turning to the private interests at issue, Mr. Gourley has the right to live in his own home and the right to the care, custody, and control of his children, which "is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Both are unquestionably destroyed by the order, which prohibited Mr. Gourley from contacting any of his three children for a year and directed him to immediately move out of his family's home.[1]
¶ 54 The risk of erroneous deprivation under this procedure is extreme. And the utility of allowing the cross-examination of the alleged victim is obvious. Courts have long recognized cross-examination is "beyond any doubt the greatest legal engine ever invented for the discovery of truth." 5 John Henry Wigmore, A Treatise on the Anglo-American System of Evidence in Trials at Common Law § 1367 (3d ed.1940). See also Goldberg v. Kelly, 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) ("In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."); In re Marriage of Rideout, 150 Wash.2d at 352, 77 P.3d 1174 ("it may often be preferable for the superior court judge or commissioner to hear live testimony of the parties or other witnesses.").
¶ 55 Although the right to confront one's accuser may not apply in some civil proceedings, Chmela v. Department of Motor Vehicles, 88 Wash.2d 385, 392, 561 P.2d 1085 (1977), "due process may guarantee the right to cross-examine witnesses even if the confrontation clause does not apply directly." In re Det. of Brock, 126 Wash.App. 957, 963, 110 P.3d 791 (2005).
*1195 ¶ 56 In Flory v. Department of Motor Vehicles, 84 Wash.2d 568, 527 P.2d 1318 (1974), the respondent challenged hearing procedures for driver's license revocation which barred the tribunal from considering live testimony. Relying on Goldberg, we held the requirements of a due process hearing "included the right to confront adverse witnesses, the right to present evidence and oral argument, and the right to representation by counsel." Id. at 571, 527 P.2d 1318. See also Little v. Rhay, 8 Wash.App. 725, 509 P.2d 92 (1973) (holding that although the Sixth Amendment right to confront witnesses may not apply directly in civil proceedings "the due process of law clauses in the Fifth and Fourteenth Amendments give one the opportunity to cross-examine in civil proceedings as a matter of constitutional right.").
¶ 57 The facts of this case demonstrate the severity of the risk of erroneous deprivation. The petition for the protective order alleged Mr. Gourley had molested N. for a period of one-and-a-half years, beginning in November 2001. The petition included several declarations, including those of N. and Detective Patrick VanderWeyst of the Snohomish County Sheriff's Office. In his declaration Detective VanderWeyst stated Mr. Gourley admitted to having rubbed aloe vera on N.'s breasts, and admitted knowing what he did was wrong and needing counseling.[2] While the majority accepts Detective VanderWeyst's statements as fact, majority at 1187, it must be noted Mr. Gourley denies admitting he rubbed lotion on N's breasts.[3] N.'s declaration in support of the petition states Mr. Gourley had abused her sexually and had confessed before the entire family in April 2003 to having done so. However the record also demonstrates N. denied any abuse had taken place on at least two separate occasions: first, when Ms. Gourley asked N. and her sister about the alleged abuse after speaking with the neighbor who had contacted the authorities, she was told "it was a big misunderstanding";[4] and second, after Mr. Gourley's children were individually interviewed by Dawn Hilliard of Child Protective Services on March 7, 2003, Ms. Hilliard's notes state that "there are no disclosure [sic] of sexual abuse at this time."[5]
¶ 58 These statements cannot all be true. Under these circumstances, cross-examination provides an invaluable safeguard against error by allowing the parties, and the trial court, to establish the "circumstances surrounding the incident and the [witness'] statements . . . upon which to base a determination of reliability." State v. Dahl, 139 Wash.2d 678, 687, 990 P.2d 396 (1999).
¶ 59 The government's interest, the added fiscal and administrative burden on the government resulting from the cross-examination, is negligible at best. The only change to the structure of the hearing would be the presence and questioning of N. and perhaps others by counsel, which does not tip the balance in favor of denying the right to cross-examine. Nguyen, 144 Wash.2d at 532, 29 P.3d 689.[6]
¶ 60 Finally, because the legislature granted parties in domestic violence protective order proceedings the right to a "full hearing," the trial court's denial of the right to cross-examine constitutes a distinct due process violation. State v. CPC Fairfax Hosp., 129 Wash.2d 439, 452-53, 918 P.2d 497 (1996) (the deprivation of a statutory right in the context of proceedings potentially abridging *1196 a liberty interest "also constitutes a deprivation of that process due under the Fourteenth Amendment to the United States Constitution because the deprivation is without lawful authority.").
¶ 61 I would uphold the statutory and due process rights which guarantee the respondent's opportunity to cross-examine his accuser.
¶ 62 I dissent.
NOTES
[1] Kimberly Gourley will hereinafter be referred to as Ms. Gourley. Because the children in this case are minors, we refer to them by the initial of their first name.
[2] The dissent misunderstands that Mr. Gourley himself made this admission in this filed declaration. This is the statement accepted at face value, not other oral representations Mr. Gourley made and later denied. See dissent at 1187.
[3] The history of the rule confirms this conclusion.
[4] Mr. Gourley did not subpoena, or file a motion to subpoena, N. to testify.
[5] RAP 18.1(b) provides in pertinent part: "The party must devote a section of its opening brief to the request for the fees or expenses. Requests made at the Court of Appeals will be considered as continuing requests at the Supreme Court."
[*] Judge Christine Quinn-Brintnall is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).
[1] See RCW 26.50.160 (requiring courts to input all relevant information in the judicial information system database for causes involving protection orders, antiharassment orders, third-party custody, parentage, and marital dissolution; this database seeks "[t]o prevent the issuance of competing protection orders in different courts and to give courts needed information for issuance of orders").
[2] In this case, the respondent, Gourley, is the child's biological father. But the dissent's reliance on Mathews appears to grant all respondents in protection order proceedings the same compulsory process and confrontation rights. Protection orders are often sought by a biological parent seeking to restrain continued contact with a stepparent or live-in partner who has not legally adopted the child. Importantly, in my view, but for their relationship to the child's parent, these individuals would have no constitutionally protected right to contact with the child over the parent's objection and, therefore, a heightened due process standard should not apply in these protection order proceedings.
[1] Clerk's Papers (CP) at 30-34.
[2] CP at 147.
[3] Mr. Gourley's declaration says, "Detective VanderWeyst states that I told him I rubbed aloe vera on [N]'s breasts. I did not." CP. at 139. This declaration is not contradicted by Mr. Gourley's account of the events of April 4, 2003, cited by the majority. See majority at 1187. The majority characterizes Detective VanderWeyst's allegations as "oral representations Mr. Gourley made and later denied." Majority at 1187 n. 2 When presented with two irreconcilable accounts made under oath such as these, credibility judgment is best left to the trial court.
[4] CP at 85.
[5] CP at 95.
[6] As we explained in Nguyen, the governmental interest factor "relates to practical and financial burdens to be imposed upon the government were it to adopt a possible substitute procedure for the one currently employed," and "does not relate to the interest which the government attempts to vindicate through the procedure itself." Nguyen, 144 Wash.2d at 532, 29 P.3d 689 (emphasis added).