# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JENNIFER WILEY,<br><br>    Respondent,<br><br>  v.<br><br>DAVID WILEY,<br><br>    Appellant. | ) ) ) ) ) ) ) ) ) ) ) | No. 74818-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: November 14, 2016 |

APPELWICK, J. — David Wiley appeals a domestic violence protection order issued to protect his former spouse, Jennifer Wiley. He argues that the court's findings are not supported by substantial evidence, the court erred in allowing hearsay testimony, the court violated his due process rights, the doctrines of judicial and equitable estoppel bar Jennifer from making contradictory statements, and the court erroneously questioned him about his religious beliefs. Jennifer requests attorney fees on appeal. We affirm.

## FACTS

Jennifer Wiley and David Wiley were married in 2004. They have three children together.

The parties separated on July 31, 2015, when Jennifer[1] filed for dissolution. Under an agreed temporary order filed on August 31, 2015, David and Jennifer agreed to continue cohabitating in the family home. They agreed not to monitor the other concerning e-mails, text messages, and telephone calls. The order also stated that neither parent shall use corporal punishment on any of the children.

On January 6, 2016, Jennifer filed a petition for an order of protection. She requested emergency temporary protection on the grounds that if David had notice of a hearing, he may try to hurt her before it happened. Jennifer alleged that David had committed specific acts of domestic violence. She stated that on December 29, 2015, David began harassing her about the locks that she had installed on the bedroom door she shared with their son. Jennifer alleged that in November, David placed two bullet-riddled shooting targets in front of her closet. She also stated that David had slapped their son in the face.

Jennifer presented the petition to an ex parte commissioner. The commissioner expressed concern over the fact that Jennifer sought to change the orders previously entered in the dissolution case. The commissioner directed Jennifer to file a motion in the family law matter and set a hearing.

A hearing on the protection order was held on February 1, 2016. The court found by a preponderance of the evidence that there was a threat of domestic violence. The court entered an order of protection, effective until February 1, 2017.

David appeals the issuance of the protection order.

---

[1] We refer to the parties by their first names for clarity. No disrespect is intended.

DISCUSSION

I. Abuse of Discretion

David essentially argues that the court's findings are not supported by substantial evidence. He argues that there was no evidence to support the finding that he injured any of the children—instead, the evidence showed that dangerous conditions occurred while the children were in Jennifer's custody. And, he argues that Jennifer's photographs of the paper targets are not credible.

This court reviews a trial court's decision to grant a protection order for an abuse of discretion. In re Parentage of T.W.J., 193 Wn. App. 1, 6, 367 P.3d 607 (2016). We will not disturb such a decision on appeal, unless the court's discretion was manifestly unreasonable, exercised on untenable grounds, or for untenable reasons. Id. Where the trial court has weighed the evidence, this court's role is to determine whether substantial evidence supports the findings of fact and whether the findings in turn support the conclusions of law. In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999). Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the stated premise. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 819, 828 P.2d 549 (1992). We will not substitute our judgment for that of the trial court, weigh the evidence, or determine witness credibility. Greene, 97 Wn. App. at 714.

Under chapter 26.50 RCW, a victim of domestic violence may petition the court for an order of protection. RCW 26.50.030. The petition must allege the existence of domestic violence. RCW 26.50.030(1). And, it must be supported by an affidavit made under oath which states the specific facts and circumstances

3

supporting relief. Id. "Domestic violence" is defined in part as, "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members." RCW 36.50.010(3)(a).

The trial court found that based on the facts presented, there was a threat of domestic violence. It ruled,

> In terms of domestic violence, I think the preponderance of the evidence is there; and I think that one thing that really kind of tips the balance, besides the [in]jury to the child, to [T.], but I think these targets are really concerning. Maybe I'm missing the boat or something like that, but when somebody puts targets in a closet with bullet holes in it rather than put it in some notebook or something or hang it up in the garage—

David asked if he could explain the targets, but the court stated that it had already ruled.

We conclude that the trial court's finding that there was a threat of domestic violence is supported by substantial evidence. Jennifer supported the petition for a protection order with her own statement, certified under penalty of perjury under the laws of Washington to be true and correct. In this statement, Jennifer alleged that David slapped their son in the face when he was not brushing his teeth correctly. She attached a report from the school nurse, which provided that Jennifer brought the son in to see the nurse and reported that his father slapped him on the cheek with an open hand. She also attached a declaration from her son's pediatrician, who discouraged corporal punishment and spanking as means of disciplining the child. And, she attached a declaration from her son's counselor, who recommended that the child not be spanked.

Jennifer also stated that she had recently put a lock on the door of the bedroom she now shares with their son. She explained that she put the lock on the door, because David broke down their bedroom door when she hid in the room after becoming afraid of him during an argument. She claimed that David had begun "harassing" her about the newly installed lock on the bedroom door, and his behavior had become increasingly more threatening as the dissolution proceedings went on. She expressed her belief that David would physically hurt her if he could figure out a way to do so without leaving a mark, and that he would have done so on prior occasions if the children had not been present. She stated, "I have essentially been using my kids as shields because I don't think he will seriously harm them or me in their presence. However, I am terrified to be alone with David."

Jennifer also described and attached pictures of the paper targets she found. She stated that David placed bullet-riddled shooting targets in front of her closet, which terrified her when she went to get clothes from the closet. She interpreted the placement of the targets as an intentional threat.

David argues that the photographs of the paper targets do not support Jennifer's contention that the targets were hung up on a closet. He contends that the photographs show the paper targets displayed on a bed and in the air, with sharp fold marks on one of the targets. As a result, David argues that the trial court's finding that these targets were in a closet is not supported by the evidence. David also argues that the trial court's consideration of evidence that was found in

5

David's private space violated his right to privacy. And, he alleges that Jennifer stalked him when she discovered these targets.

But, this court does not make credibility determinations on appeal. Greene, 97 Wn. App. at 714. Nor does it reweigh the evidence submitted to the trial court. Id. David essentially asks us to do just that by reexamining the photographs and balancing David's and Jennifer's statements concerning the paper targets. We will not do so. The evidence submitted to the trial court was such that a reasonable person could conclude that the paper targets were in front of Jennifer's closet, a place where she would be expected to see them.

Nor can David establish a privacy violation due to the court's consideration of the paper targets. The Fourth Amendment applies only to actions of government officials. Kalmas v. Wagner, 133 Wn.2d 210, 216, 943 P.2d 1369 (1997). It extends to private persons only if government officials affirmatively facilitate or encourage an unreasonable search performed by a private person. Id. at 218. Here, Jennifer discovered the paper targets in the bedroom where her clothes were stored. Though David slept there and she did not, he did not establish that she had no right to be there. He recognized that Jennifer's belongings were still stored in a closet in their previously shared bedroom. Nor did David establish that the paper targets were not in the open to be seen.[2] Jennifer took photographs of the targets. She described the targets in her statement in support of the petition for a

---

[2] David argued below that the paper targets were rolled up and placed in the corner of his room. He asserted that Jennifer would have had to search through his belongings to find the targets. But, the trial court weighed this evidence. We will not make credibility determinations or reweigh the evidence on appeal. Greene, 97 Wn. App. at 714.

protection order, and she attached the photographs to the petition. No government actor was involved in the discovery of these targets. David's claim of a privacy violation must fail.

And, the trial court's findings that a threat of domestic violence was proven by a preponderance of the evidence support the conclusion that a protection order is proper. We have previously held that a history of ongoing abuse and the trial court's belief that the petitioner feared future abuse were sufficient to persuade a rational person that the petitioner had been put in fear of imminent physical harm. Spence v. Kaminski, 103 Wn. App. 325, 333, 12 P.3d 1030 (2000); see also Hecker v. Cortinas, 110 Wn. App. 865, 870, 43 P.3d 50 (2002). The same is true here. The evidence of the injury to the child, the escalating threatening behavior, and the paper targets together presented a threat of an infliction of imminent physical harm that was sufficient to support the issuance of the protection order. We hold that the trial court did not abuse its discretion in granting Jennifer a protection order against David.

II.  Hearsay Evidence

David argues that the trial court erred in permitting hearsay evidence. He argues that the rules of evidence should have applied. During the hearing on the protection order, Jennifer referred to an instance where David called the police on Jennifer. She stated that when the police investigated the incident, they told Jennifer that they would not continue to assist David in harassing her. David objected to these statements as hearsay.

ER 1101(c)(4) provides that the rules of evidence need not be applied in protection order proceedings under chapter 26.50 RCW. Accord, Gourley v. Gourley, 158 Wn.2d 460, 467, 145 P.3d 1185 (2006); Hecker, 110 Wn. App. at 870. Therefore, the court did not err in considering hearsay evidence.

III. Due Process

David alleges multiple due process violations. He argues that the trial court violated his due process rights by issuing the temporary order of protection after an ex parte hearing. He contends that the trial court's extension of time for oral argument violated his due process rights, because time was not divided equally amongst the parties. And, he alleges that his due process rights were violated when the trial court based the protection order on an injury to the child, when no such injury had occurred or even been alleged.

Due process fundamentally requires the opportunity to be heard at a meaningful time and in a meaningful manner. Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The concept of due process is flexible, requiring procedural protections tailored to the particular situation. Id. at 334.

Our Supreme Court has held that the procedures provided in chapter 26.50 RCW protect the due process requirements of being heard at a meaningful time and in a meaningful manner. Gourley, 158 Wn.2d at 468. The court described those procedures as:

> (1) a petition to the court, accompanied by an affidavit setting forth facts under oath, (2) notice to the respondent within five days of the hearing, (3) a hearing before a judicial officer where the petitioner and respondent may testify, (4) a written order, (5) the opportunity to move for revision in superior court, (6) the opportunity to appeal, and

(7) a one-year limitation on the protection order if it restrains the respondent from contacting minor children.

Id. at 468-69.

These procedures were met here, and David does not contend otherwise. Therefore, we conclude that David's due process rights were not violated by the issuance of the ex parte temporary protection order.

Nor did the trial court violate David's due process rights by extending the amount of time for oral argument. The local rules allow the court to extend the time for oral argument. Snohomish County Local Court Rules (SCLCR) 7(b)(2)(D)(10)(c). And, the record does not show, as David claims, that the court granted additional time to Jennifer but not David. Instead, the court stated that each party would receive ten minutes: five to address the protection order and five to address the issues raised in the dissolution case. David was given an opportunity to present his arguments and address questions from the court. We conclude that any uneven distribution of time did not violate his right to due process.

David also argues that the court violated his due process rights by issuing the protection order based on an injury to the child, where no injury was alleged. The record does not support this claim. As discussed above, Jennifer alleged this injury in the petition for the protection order, and substantial evidence supports this finding. See supra section I.

We conclude that the trial court did not violate David's due process rights in issuing the protection order.

IV. Estoppel Doctrines

David contends that Jennifer has asserted contradictory positions in the dissolution proceedings and the protection order proceedings. He argues that the doctrines of judicial estoppel and equitable estoppel prohibit her from doing so.

Judicial estoppel is an equitable doctrine. Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007). It prevents a party from taking one position in a court proceeding and then later seeking an advantage by asserting a clearly inconsistent position. Id. The purpose of the judicial estoppel doctrine is to promote respect for judicial proceedings, and to avoid inconsistency. Id. This court reviews a trial court's application of the doctrine for an abuse of discretion. Bartley-Williams v. Kendall, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006).

In determining whether to apply this doctrine, courts examine: (1) whether a party's later position is clearly inconsistent with an earlier position, (2) whether judicial acceptance in a later proceeding would create the appearance that the party had misled the court, and (3) whether the party seeking to assert an inconsistent position would gain an unfair advantage or impose an unfair disadvantage on the opposing party. Arkison, 160 Wn.2d at 538-39.

Here, David alleges that Jennifer's statements in the dissolution proceedings cannot be aligned with her later statements in the protection order proceedings. He alleges that in the dissolution proceedings, Jennifer stated that David is physically and sexually abusive toward the children. Such a position, he contends, is inconsistent with her position in the protection order proceedings, that she has been abused and feels safe only when the children are present.

10

The record does not support this contention. Instead, the record shows that Jennifer raised concerns of David's manipulative and controlling behaviors when she first filed for dissolution. And, she raised similar concerns in December 2015, in response to David's motion to amend the temporary orders in the dissolution case. In the petition for the protection order, Jennifer described how David had become increasingly hostile and that she had become afraid to be alone with him. Judicial estoppel does not bar Jennifer from describing how David's behavior changed over time.

Equitable estoppel is premised on the principle that a party should be held to a representation previously made where inequitable consequences would otherwise result to a party who has justifiably and in good faith relied on it. Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wn.2d 738, 743, 863 P.2d 535 (1993). This doctrine has three elements: (1) a party's admission, statement, or act inconsistent with a later claim, (2) action by another party in reliance on that admission, statement, or act, and (3) injury that would result to the relying party if the first party is permitted to contradict or repudiate the prior admission, statement, or act. Id. A party asserting equitable estoppel must prove each element with clear, cogent, and convincing evidence. Id. at 744.

David alleges that Jennifer's characterization of the living spaces within the family home violates the doctrine of equitable estoppel. He argues that she has misled the court by not clearly distinguishing between the room she shared with her son and the room she previously shared with David.

These allegations do not present clear, cogent, and convincing evidence that David justifiably relied on representations previously made by Jennifer. Jennifer has stated that after moving out of the bedroom she shared with David, she shared a bedroom with her son. She has maintained that she kept a closet in the bedroom she used to share with David. David has not identified an inconsistent statement or articulated his reliance on a prior representation. Thus, the doctrine of equitable estoppel does not apply.

## V.   Religious Beliefs

David argues that the trial court erred in raising his religious beliefs. He argues that the trial court's questions on this topic violated ER 610 and his constitutional rights. David asserts that the court demonstrated bias toward him by asking these questions, and this bias warrants sanctions.

During the hearing, the court asked several questions to clarify whether David was contending that his religious freedom permitted corporal punishment of the children. Jennifer argued that David was angry after mediation and learning that a judge was not likely to sign an order allowing him to exercise corporal punishment on his children, which he believed violated his constitutional freedom of religion. To that, the court asked, "Freedom of religion to, what, beat your kids?" The court later asked David to clarify whether he was claiming that spanking the children was a freedom of religion issue. David clarified that he was no longer arguing that.

ER 610 provides, "Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of

their nature the witness' credibility is impaired or enhanced." The Washington constitution also protects religious freedom in the context of the courtroom. WASH. CONST. art 1, § 11. It provides, in part, "No religious qualification shall be required for any public office or employment, nor shall any person be incompetent as a witness or juror, in consequence of his opinion on matters of religion, nor be questioned in any court of justice touching his religious belief to affect the weight of his testimony." Id.

Neither the evidentiary rules nor the constitution prohibit the questions asked below. David had previously maintained that prohibiting corporal punishment violated his religious beliefs. The court's questions were clarifying questions as to whether David had abandoned that position. The court did not ask any questions that suggested that David's credibility was impaired due to his religious beliefs or that David's statements would be given less weight. And, nothing in the record indicates that the court was biased against David as a result of David's religious beliefs. Instead, the court stated that its decision regarding the protection order was based on the evidence, particularly the injury to the son and the targets. We conclude that the trial court did not improperly consider David's religious beliefs or demonstrate bias against him.

## VI. Attorney Fees

Jennifer requests attorney fees on appeal under RCW 26.50.060 and RAP 18.1. Attorney fees may be awarded when authorized by a contract, statute, or recognized ground in equity. Mellor v. Chamberlin, 100 Wn.2d 643, 649, 673 P.2d 610 (1983). Where attorney fees are permitted at trial, the prevailing party may

recover them on appeal. RAP 18.1; <u>Landberg v. Carlson</u>, 108 Wn. App. 749, 758, 33 P.3d 406 (2001). RCW 26.50.060(1)(g) permits the petitioner to recover reasonable attorney fees. Jennifer is the prevailing party on appeal. Therefore, she is entitled to appellate attorney fees.

We affirm.

WE CONCUR: