# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| HANNAH NITKEY,<br><br>                Respondent,<br><br>      v.<br><br>STEPHEN MYERS,<br><br>                Appellant. | No. 79332-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: March 9, 2020 |

MANN, A.C.J. — Stephen Meyers appeals the superior court's order denying revision of a domestic violence protection order entered against him. At the hearing on the petition, a commissioner denied Myers's request to present live testimony and to cross-examine the petitioner based solely on the rationale that such procedural safeguards are unavailable in protective order hearings, without individualized consideration of the competing interests at stake. The superior court recognized the error, and yet denied revision because the commissioner considered documentary evidence from both sides. The court thereby abused its discretion and deprived Myers of his right to a meaningful opportunity to be heard. We reverse.

I.

On September 25, 2018, Hannah Nitkey petitioned for a domestic violence protection order against Stephen Myers, with whom she had a dating relationship. Nitkey alleged that, the previous evening while Myers was intoxicated and asleep, she looked though messages and other private information on his cell phone. When Myers awoke to find Nitkey holding his phone, he became irate and pinned her on the bed "with full force," while screaming at her. Nitkey alleged that Myers then choked her until she was unable to breathe and her vision became blurry. Nitkey was "scared for [her] life." She stated that Myers tried to prevent her from leaving by taking her car keys and threatening her, but she was eventually able to drive away with her two-year-old daughter. Nitkey also described a previous incident in which Myers sexually assaulted her while holding a taser to her throat and provided other examples of Myers's threatening behavior during the course of the relationship.

The trial court issued a temporary protection order and set the matter for a hearing on October 9, 2018. At the hearing, Myers appeared with counsel and Nitkey appeared pro se before a Snohomish County Superior Court Commissioner. The commissioner asked Nitkey whether there was anything she wished to "add to her declaration." Nitkey spoke briefly about the taser incident.

Myers's counsel requested leave to cross-examine Nitkey and to present Myers's testimony. The commissioner denied the request, stating, "I'm not going to take testimony at these hearings. Under Gourley v. Gourley, [158 Wn.2d 460, 145 P.3d 1185 (2006) (plurality opinion)] it's by declaration only." Myers's counsel disputed the commissioner's interpretation of Gourley. He argued that Gourley did not stand for the

2

position that cross-examination was inappropriate in all cases involving protection orders; but merely upheld the decision not to allow cross-examination under the specific facts of that case. The commissioner responded, "[w]e don't allow testimony at these hearings." Myers's counsel continued to object, arguing that there was a constitutional right to testify and cross-examine the petitioner, especially when the proposed witnesses are not minors. The commissioner responded, "[t]he court handles these hearings by declaration only. So if he wishes to testify, he's going to have to submit a sworn declaration to the Court for the Court's review." Myers agreed to reissuance of the temporary order and a continuance of the hearing so he could submit documentary evidence.

Myers submitted a declaration, conceding that he and Nitkey argued, but otherwise stating that, "[a]lmost every statement in the petition for an order of protection is false." Myers claimed that, on the night in question, Nitkey woke him up by hitting him in the face with his cell phone. He asserted that Nitkey was upset and "out of control" because she believed he was "cheating on her." Myers demanded that Nitkey leave, but denied assaulting her "in any manner." He alleged that Nitkey tampered with his cell phone without permission and stole passwords to various accounts. Both Myers and Nitkey submitted additional documentary and photographic evidence.

The parties appeared for a hearing on the petition on October 25, 2018. The commissioner again began by asking Nitkey, without swearing her in as a witness, to describe her relationship with Myers and the events that led up to the September 24 incident. Nitkey provided more details about the assault. The commissioner did not elicit any statements from Myers, but reviewed his written materials. Myers's counsel

reiterated his objection to the commissioner's previous ruling. He argued that the inability to cross-examine the petitioner impeded his ability to fully explore the inconsistencies in her allegations. The commissioner allowed Myers to respond to a few factual allegations raised by Nitkey in her unsworn statements at the hearing.

The commissioner determined that Myers committed an act of domestic violence and granted the petition. The court entered a one-year protection order.

Myers filed a motion to revise. Nitkey, now represented by counsel, opposed the motion. The superior court denied the motion stating:

> While a rule always prohibiting, e.g. cross examination or live testimony would be inappropriate under Aiken vs. Aiken, 187 Wash.2d 491 (2017), the record in this case shows that the commissioner received and considered a substantial body of information from both sides, and e.g. sought to examine and consider possible inconsistencies by the Petitioner. The motion for revision is respectfully denied.[1]

Myers appeals.[2]

## II.

A court commissioner's decision is subject to revision by the superior court. RCW 2.24.050. On a revision motion, the superior court reviews a commissioner's ruling de novo based on the evidence and issues presented to the commissioner. RCW 2.24.050; In re Marriage of Moody, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999). If the superior court denies the motion to revise, the superior court has then adopted the commissioner's findings of fact and conclusions of law as its own. Maldonado v. Maldonado, 197 Wn. App. 779, 789, 391 P.3d 546 (2017).

---

[1] According to the parties' briefing, the superior court held a hearing on the motion for revision which was neither recorded nor otherwise preserved by the court reporter's notes.

[2] We note that the respondent withdrew appendices to her brief comprised of documents not considered below. We do not consider any remaining references in the briefing to factual matters that are outside the record on appeal.

On appeal, we review the superior court's ruling, not the commissioner's order. In re Matter of Knight, 178 Wn. App. 929, 936, 317 P.3d 1068 (2014). And we review a superior court's decision to grant or deny a protective order for abuse of discretion. Rodriguez v. Zavala, 188 Wn.2d 586, 590-91, 398 P.3d 1071 (2017).

II.

Myers challenges the denial of his request to present live testimony and cross-examine the petitioner, based on a blanket prohibition, rather than a case-specific inquiry.

The provisions of the Domestic Violence Prevention Act, chapter 26.50 RCW, do not require a court "to allow live testimony or cross-examination in every protective order proceeding."[3] Aiken v. Aiken, 187 Wn.2d 491, 499, 387 P.3d 680 (2017); Gourley, 158 Wn.2d at 469-70. The determination of whether, in an individual case, due process principles warrant cross-examination and live testimony before a court issues a protection order is governed by the balancing test[4] set forth in Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); Aiken, 187 Wn.2d at 499. And, "as part of the Matthews balancing test, trial court judges and commissioners should specifically weigh the likely value of cross-examination against the potential damage" to the witness involved. Aiken, 187 Wn.2d at 505. "A bright line rule

---

[3] "Chapter 26.50 RCW provides the following procedural protections: (1) a petition to the court, accompanied by an affidavit setting forth facts under oath; (2) notice to the respondent within five days of the hearing; (3) a hearing before a judicial officer where the petitioner and respondent may testify; (4) a written order; (5) the opportunity to move for revision in superior court; (6) the opportunity to appeal; and (7) a one-year limitation on the protection order if it restrains the respondent from contacting minor children." Gourley, 158 Wn.2d at 468-69.

[4] Evaluating the process due under the Matthews test requires balancing three factors: (1) the private interest impacted by the government action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest, including the additional burden that added procedural safeguards would entail. Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

prohibiting cross-examination or live testimony in protective order hearings is inappropriate, as it is the province of the trial judge or commissioner to grant or deny cross-examination based on individualized inquiries into the facts of the instant case." Aiken, 187 Wn.2d at 505-06.

Both Aiken and its predecessor, Gourley, involved protection orders that prohibited contact between parents and their minor children, who raised allegations of abuse. Aiken, 187 Wn.2d at 494-95; Gourley, 158 Wn.2d at 464. In Gourley, a mother sought a protection order on behalf of herself and her children against her husband, based on her daughter's allegations of sexual abuse. Gourley, 158 Wn.2d at 464. The petition was supported by the mother's declaration, and the declarations of the daughter who made the allegation, the daughter's counselor, and an investigating law enforcement officer. Gourley, 158 Wn.2d at 465. The court also granted Gourley's request to depose the mother. Gourley, 158 Wn.2d at 465. Gourley argued that his daughter's hearsay statements were an insufficient evidentiary basis to support the order and asserted a right to cross-examine his daughter at the hearing on the petition. Gourley, 158 Wn.2d at 465. The commissioner rejected his argument and denied the request. Gourley, 158 Wn.2d at 465.

Our Supreme Court affirmed, in a plurality opinion, concluding that the commissioner properly exercised his discretion in denying the request.[5] Gourley, 158 Wn.2d at 470. The court explained that the commissioner had "ample evidence" before it, including Gourley's own admissions, to make the determination that cross-

---

[5] Six justices agreed that "due process may require cross-examination but that Gourley had not shown it was necessary in his case." Aiken, 187 Wn.2d at 498.

6

examination was unnecessary, and therefore, the decision did not violate Gourley's right to due process. Gourley, 158 Wn.2d at 470. The court expressly limited its analysis to the facts of the case, indicating that "[w]hile the facts of this case did not require testimony or cross-examination, live testimony and cross-examination might be appropriate in other cases." Gourley, 158 Wn.2d at 470.

A decade later, the Supreme Court considered a similar argument in Aiken, where the father challenged a protection order that was based solely on documentary evidence. Aiken, 187 Wn.2d at 501. The court accepted review in order to "clarify the ultimate holding of Gourley." Aiken, 187 Wn.2d at 497. As in Gourley, the mother in Aiken sought a protection order on behalf of herself and her children, based on an allegation by one of the children of physical and emotional abuse by the father. Aiken, 187 Wn.2d at 495. The father requested a full testimonial hearing on the petition and an opportunity to cross-examine his daughter. Aiken, 187 Wn.2d at 495-96. The mother objected, maintaining that the process would be traumatizing for the daughter. Aiken, 187 Wn.2d at 496. The commissioner denied the request. Aiken, 187 Wn.2d at 496. The commissioner granted the petition and imposed the order based on documentary evidence that included the mother's declaration and deposition, a guardian ad litem report, and some of the daughter's health care records. Aiken, 187 Wn.2d at 496, 504.

Applying Gourley and the Matthews balancing test, the court held that it was "well within the sound discretion of the commissioner to decide that cross-examination in this case was unnecessary and would likely have harmed [his daughter]." Aiken, 187 Wn.2d at 504. While recognizing cross-examination as a "powerful instrument in eliciting truth or discovering error," based on the evidence in the record, it was reasonable to

conclude that cross-examination would have produced only "fearful responses" and no additional information beyond what was already in the evidence. Aiken, 187 Wn.2d 505. The court went on to clarify that trial courts must conduct "individual inquiries" into the facts of the case in order to evaluate requests for live testimony or cross-examination, and may not impose a "bright line rule" prohibiting these safeguards in protective order hearings. Aiken, 187 Wn.2d at 505-06.

Nitkey contends that the analysis of Gourley and Aiken does not apply here, where the witness sought to be cross-examined is an adult who is "capable of executing affidavits under the penalty of perjury." This argument is unpersuasive. Both Gourley and Aiken involved teenagers who were fully capable of writing statements. There is nothing in these cases to suggest, nor any logical basis to conclude, that a blanket prohibition on live testimony and cross-examination is incompatible with principles of due process only in cases involving minors.

In both Gourley and Aiken, judicial officers exercised discretion based on the facts and arguments before them in deciding whether or not to allow cross-examination and in-court testimony. Here, the commissioner expressly refused to exercise his discretion and denied Myers's request based on a rule that the procedural safeguards are never available in protection order proceedings. On revision, the superior court acknowledged that "a rule always prohibiting" cross-examination and live testimony in protective order hearings is impermissible under Aiken. See Aiken, 187 Wn.2d at 505. Yet, the superior court denied revision based on a "substantial body of information" submitted by both parties and because the commissioner "sought to examine and consider possible inconsistencies." The superior court did not specifically weigh the

8

likely value of live testimony and cross-examination against the potential negative impact on the petitioner. In <u>Aiken</u>, there was substantial evidence of the witness's extreme fear and a tenable basis to conclude that in-court testimony and cross-examination would have added little value. <u>See</u> <u>Aiken</u>, 187 Wn.2d at 505. Here, on the other hand, although the petitioner was apparently emotional, the record suggests that she would have been able to testify in court about the incident and respond to counsel's questions. The court did not apply the correct standard in ruling on the motion for revision.[6] We reverse.[7]

_____
Mann, ACJ

WE CONCUR:

_____          _____

_____

[6] Myers also challenges the order based on the commissioner's consideration of Nitkey's unsworn statements. Contrary to Myers's claim, this did not implicate the sufficiency of Nitkey's petition which was supported by her statements made under penalty of perjury and satisfied the requirements of RCW 26.50.030(1) ("petition for relief shall allege the existence of domestic violence, and shall be accompanied by an affidavit made under oath stating the specific facts and circumstances from which relief is sought."). Based on our decision that it was an abuse of discretion to deny Myers's requests to present testimony and cross-examine the petitioner, we need not reach the issue of whether the decision to elicit and consider unsworn statements from only the petitioner deprived Myers of his right to meaningful opportunity to be heard.

[7] Because Nitkey does not prevail on appeal, we deny her request for an award of fees under RCW 26.50.060(73).