137 P.3d 25 (2006)
133 Wash.App. 545
In the Matter of the MARRIAGE OF Nichole K. STEWART, Respondent, and
Wilson G. Stewart, Appellant.
No. 55913-3-I.
Court of Appeals of Washington, Division 1.
June 19, 2006.
*26 Gregory Mann Miller, Attorney at Law, Seattle, WA, for Appellant.
Adrienne M. Finnell, Tara Katherine Richardson, Lasher Holzapfel Sperry & Ebberson PLLC, Seattle, WA, for Respondent.

PUBLISHED IN PART
ELLINGTON, J.
¶ 1 Under chapter 26.50 RCW, a domestic violence protection order may temporarily prohibit contact between a parent and his or her minor children. Such an order is not an impermissible modification of a parenting plan. The protection order that prohibited Wilson Stewart from contact with his children pending further proceedings in family court was authorized by the statute, supported by the evidence, and did not violate *27 his constitutional rights as a parent. We therefore affirm.

FACTS
¶ 2 Nichole and Wilson Stewart[1] have two children, R.S., age 13 and S.S., age 8. The Stewarts dissolved their marriage in 2001. The permanent parenting plan established Nichole as the primary residential parent.
¶ 3 Since then, there have been multiple incidents of domestic violence. In February 2002, Nichole picked up R.S. after a school basketball practice. Wilson is the team's coach. He reached into Nichole's car and smeared chewing gum in her hair, berating her in vulgar terms about her romantic life. Both children were present, and R.S. attempted to call 911 on a cell phone.
¶ 4 Wilson initially denied the incident occurred, but later pleaded guilty to assault in the fourth degree, and was ordered to participate in domestic violence treatment as part of his sentence. A no-contact order was issued, and Nichole also obtained a permanent restraining order prohibiting Wilson from harassing her, stalking her, or entering her home or workplace without her permission. The order provided that all exchanges of the children occur curbside at each party's residence.
¶ 5 Five days later, Wilson violated the order by following Nichole's car in the late evening, leaving messages on her cell phone marking her progress. Nicole contacted police. Wilson denied stalking Nichole or making the calls. After officers listened to the recordings on Nichole's voice mail, they arrested Wilson for violating the protection order.
¶ 6 In July 2003, the parties amended their parenting plan to require co-parent counseling aimed at reaching agreement on minor modifications to the residential schedule, and adding a Starbucks in Bothell as a location for visitation exchanges.
¶ 7 In March 2004, Wilson completed the domestic violence treatment required by the February 2002 protection order. That same month, during a visitation exchange, he is alleged to have shoved his hand down Nichole's pants and then forced his finger into her mouth, in the presence of S.S. In September 2004, Wilson allegedly barged into Nichole's home, accused her of seeing other men, and, with the children present, ripped the comforter off her bed to examine the sheets for evidence of sex.
¶ 8 On Christmas Day 2004, the Stewarts were to do a curbside exchange of the children at Wilson's house. When Nichole arrived to drop off the children, Wilson approached and tried to reach her through the car window. He then spat upon her in front of the children. The children apparently confronted Wilson about this incident later in the day. Nichole testified that S.S. telephoned her several times from Wilson's house, crying and then hanging up because she was afraid Wilson would catch her calling Nichole. Wilson was later charged with assault in the fourth degree and violation of the 2002 restraining order.[2]
¶ 9 After this incident, Nichole sought the chapter 26.50 RCW domestic violence protection order at issue here. A superior court commissioner granted the order on a temporary basis and suspended the parenting plan pending the statutory 14-day hearing.
¶ 10 At the 14-day hearing on January 26, 2005, Nichole presented her declaration and police reports detailing the incidents of domestic violence. Wilson denied Nichole's allegations, and asserted instead that Nichole had initiated sexual encounters with him. It is apparent from his declaration that Wilson had asked the children about their mother's romantic life. Wilson also acknowledged that the night before the incident, Christmas Eve, he drove past Nichole's house and observed her fiancé's car in the driveway, and that he saw it there again when he drove by at 7:00 a.m. Christmas morning.
*28 ¶ 11 The commissioner entered a one-year protection order prohibiting Wilson from contact with Nichole or the children. The order included the following language: "The parenting plan entered in the dissolution action is suspended pending further order through a parenting plan modification action."[3]
¶ 12 Wilson moved for revision. Judge Douglass North denied the motion, ruling that: "The court finds the mother's credibility is greater than the father's....[and][t]here is evidence of imminent psychological harm to the children which is a basis for an order of protection as to the children."[4] That afternoon, Nichole filed a formal motion to modify the parenting plan.
¶ 13 Wilson timely appealed the protection order and the order denying revision, challenging the restriction on his contact with his children. Although the pending modification action and the expiration of the protection order render this appeal moot, we address the parties' contentions because of the importance of the issues and the likelihood they will arise again.[5] On appeal, we review the superior court's ruling, not the commissioner's.[6] The decision to grant or deny a protection order is reviewed for an abuse of discretion.[7] Findings will be upheld on appeal if they are supported by substantial evidence in the record.[8]

ANALYSIS
¶ 14 Valid Grounds Supported the Protection Order. Wilson first contends that psychological harm to the children is not a proper basis for the issuance of a protection order. RCW 26.50.060 authorizes the court to issue a protection order restraining the respondent from committing acts of domestic violence.[9] The order may restrict contact between a parent and child, in which case the restraint may not exceed a maximum period of one year.[10] RCW 26.50.010(a) defines domestic violence to include: "Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members."
¶ 15 There is no allegation that Wilson assaulted his children. But the children witnessed Wilson's assaults on Nichole, and were afraid for her. For example, R.S. attempted to call 911 during one assault, and when Wilson invaded Nichole's house "both children were terrified, begging [Wilson] to stop and just leave."[11] In short, there was ample evidence that Wilson caused his children to fear he would assault Nichole. Such fear is indeed psychological harm, as the trial *29 court termed it. It is also domestic violence, and is a statutory basis for an order of protection.
¶ 16 Wilson next contends that complete suspension of contact was not reasonably necessary to prevent the children from witnessing domestic violence between their parents, because third party exchanges would have accomplished the same result. But a protection order proceeding serves to provide a swift response to prevent further domestic abuse. One reason the order must be temporary is that, unlike the family court, the protection order court is necessarily limited in its ability to craft finely tuned solutions. Here, various visitation exchange procedures had been tried. Whether third party exchanges would or could be an effective solution was properly left to the family court.[12]
¶ 17 The evidence amply supported the order of protection as to the children.
¶ 18 The Statutes Are Not in Conflict. When a protection order affects contact with children, the court must consider the best interests of the children and the other factors set forth in the Parenting Act: "On the same basis as is provided in chapter 26.09 RCW, the court shall make residential provision with regard to minor children of the parties. However, parenting plans as specified in chapter 26.09 RCW shall not be required under this chapter."[13]
¶ 19 Wilson contends this language contemplates that "[domestic violence] courts use only the substantive and procedural provisions under ch. 26.09 when making residential provisions for the children," and that "permitting a [domestic violence order of protection] issued under ch. 26.50 to have more than the most fleeting effect on a permanent parenting plan is plain error and antithetical to the carefully balanced statutory structure contained in ch. 26.09."[14] Wilson contends consideration of hearsay evidence[15] and the lack of a testimonial hearing[16] offend the Parenting Act, as does entry of an order affecting his time with his children without the findings required by the Parenting Act.
¶ 20 Wilson misunderstands the interaction between these statutes. Nothing in RCW 26.50.060(1) indicates a legislative intent to incorporate the full panoply of procedures and decision factors from the Parenting Act into the protection order proceeding. To the contrary, the protection order proceeding is intended to be a rapid and efficient process. Parents are required to disclose whether there is a parenting plan in place,[17] and the court is expressly authorized to make a temporary order affecting the residential arrangements of children and/or restricting parental contact without entering a parenting plan. Any such order is limited to one year.[18] The fact that the protection order court is required to make its orders affecting minor children "on the same basis" as required by the family law statutes does not mean that the same formal findings or procedures are required. Rather, it means what it says: the protection order court must consider the same factors in making its temporary orders.
¶ 21 Wilson contends this reading of the protection order statute creates an "irreconcilable conflict" with the Parenting Act.[19] But we discern no other possible reading of the *30 protection order statute, and no conflict with the Parenting Act. Rather, the two are entirely consistent. RCW 26.09.191(2)(a) provides that in parenting plans, residential time with a child must be restricted where there is a pattern of emotional abuse of the child or a history of acts of domestic violence:

The parent's residential time with the child shall be limited if it is found that the parent has engaged in any of the following conduct: (i) Willful abandonment that continues for an extended period of time or substantial refusal to perform parenting functions; (ii) physical, sexual, or a pattern of emotional abuse of a child; (iii) a history of acts of domestic violence as defined in RCW 26.50.010(1) or an assault or sexual assault which causes grievous bodily harm or the fear of such harm....[20]
This provision incorporates the definitions of domestic violence contained in the protection order statute. Authorizing the domestic violence protection order court to restrict contact is thus entirely congruent with the Parenting Act.
¶ 22 Wilson next contends a protection order should have only a "fleeting effect" on parental contact.[21] That precisely describes the effect of the order here. In the morning on March 10, 2005, Judge North refused to revise the protection order. The same afternoon, Nichole filed a motion in family court seeking to modify the parenting plan. Wilson could have done the same. If protection order restrictions have more than a very temporary duration, it is because the parties have delayed in seeking resort to family court. Delay is not a result of the protection order.
¶ 23 We agree that a protection order cannot actually suspend a parenting plan. Nor can it impose a long-term restriction on parental contact with a minor child, or otherwise affect the terms of the parenting plan. In purporting to suspend the entire parenting plan, the order here was overbroad. The parties plainly understood, however, that the court intended to suspend only the provisions allowing for contact between Wilson and his children,[22] and they have so litigated the order ever since. That intent and effect were entirely proper under the statute.
¶ 24 The Protection Order Did not Modify the Parenting Plan. Wilson contends the protection order amounted to an improper modification of the residential provisions of the parenting plan. Again, we disagree. A temporary suspension pending further proceedings is not a de facto modification.
¶ 25 Wilson cites the holding of In re Marriage of Barone[23] for the proposition that a protection order may not operate as a de facto modification of a parenting plan. His citation is correct, but not pertinent.[24] The order in Barone purported to effect a permanent change in child support allocation. Here, what occurred was a temporary interruption of contact pending further proceedings in family court, as authorized by the protection order statutes to protect children from the immediate threat of domestic violence. No rational person would voice an objection to temporary suspension of contact where a parent has physically abused his children. The legislature considers domestic violence by way of infliction of fear to be equally worthy of swift intervention.
¶ 26 Wilson also argues the legislature intended the modification court to take a "fresh look" at residential questions, without the influence of a protection order proceeding.[25] But the Parenting Act specifically contemplates *31 that the modification court will consider existing protection orders: "The weight given to the existence of a protection order issued under RCW 26.50 as to domestic violence is within the discretion of the court."[26]
¶ 27 The order temporarily suspending Wilson's contact with his children under the Stewarts' parenting plan was a proper exercise of the court's discretion.
¶ 28 Constitutional Right to Parent. Finally, Wilson contends that the State may interfere in a parental relationship only when a child has been harmed or there is a credible threat of harm to the child. Wilson is correct, but he fails to describe any way in which the protection order violated this principle.[27] His children were harmed by his repeated violence toward their mother, which was committed in their presence and resulted in the fear that he would again assault her.
¶ 29 Wilson further argues that because of the constitutional rights involved, due process mandates the application of the procedures of the Parenting Act before parental contact is restricted, however temporarily. He relies upon State v. Ancira,[28] in which the court acknowledged the fundamental nature of the right to parent, and held that a sentencing condition prohibiting a father's contact with his children for five years was not shown to be reasonably necessary to prevent the children from witnessing domestic violence, and that while limitations might be appropriate, they were properly the province of the family court, not the criminal court.
¶ 30 But this case is unlike Ancira. There, not only was the evidence insufficient to support the prohibition against contact, the order had a five-year duration.[29] Here, the evidence amply supported the prohibition, and the order was entered in contemplation of further proceedings in family court, which Nichole initiated the same day.
¶ 31 The protection order did not violate Wilson's constitutional right to parent. We affirm the trial court's order.
¶ 32 Affirmed.
¶ 33 The balance of this opinion having no precedential value, the panel has determined it should not be published in accordance with RCW 2.06.040.
WE CONCUR: SCHINDLER, A.C.J., and COX, J.
NOTES
[1] Because both parties share the same last name, we use their first names for the sake of clarity.
[2] In September 2005, the assault case was continued for two years on condition that Wilson attend batterer counseling at a state certified program for relapse, and have no contact with Nichole.
[3] Clerk's Papers at 44.
[4] Clerk's Papers at 122.
[5] In re Marriage of Horner, 151 Wash.2d 884, 893, 93 P.3d 124 (2004).
[6] In re Marriage of Dodd, 120 Wash.App. 638, 644, 86 P.3d 801 (2004).
[7] Hecker v. Cortinas, 110 Wash.App. 865, 869, 43 P.3d 50 (2002).
[8] Dodd, 120 Wash.App. at 645, 86 P.3d 801.
[9] RCW 26.50.060 states in relevant part:

(1) Upon notice and after hearing, the court may provide relief as follows:
(a) Restrain the respondent from committing acts of domestic violence;
(b) Exclude the respondent from the dwelling that the parties share, from the residence, workplace, or school of the petitioner, or from the day care or school of a child;
(c) Prohibit the respondent from knowingly coming within, or knowingly remaining within, a specified distance from a specified location;
(d) On the same basis as is provided in chapter 26.09 RCW, the court shall make residential provision with regard to minor children of the parties. However, parenting plans as specified in chapter 26.09 RCW shall not be required under this chapter;
....
(f) Order other relief as it deems necessary for the protection of the petitioner and other family or household members sought to be protected, including orders or directives to a peace officer, as allowed under this chapter;
....
(h) Restrain the respondent from having any contact with the victim of domestic violence or the victim's children or members of the victim's household.
[10] "If a protection order restrains the respondent from contacting the respondent's minor children the restraint shall be for a fixed period not to exceed one year." RCW 26.50.060(2).
[11] Clerk's Papers at 68.
[12] We note that third party exchanges would not necessarily have prevented the children's exposure to domestic abuse. The incident when Wilson reached into Nichole's car and rubbed chewing gum in her hair occurred not during a scheduled exchange of the children, but when Nichole was collecting her son from a school basketball practice where Wilson serves as coach.
[13] RCW 26.50.060(1)(d).
[14] App. Br. at 32.
[15] Gourley v. Gourley, 124 Wash.App. 52, 57, 98 P.3d 816 (2004) (rules of evidence need not be applied in protection order proceedings; hearsay may be considered), review granted, 154 Wash.2d 1012, 113 P.3d 1039 (2005); ER 1101(c)(4).
[16] Parties may request a testimonial hearing in protection order proceedings under King County LFLR 12(c). Wilson made no such request.
[17] RCW 26.50.030(1).
[18] RCW 26.50.060(2).
[19] App. Br. at 34.
[20] (Emphasis added).
[21] App. Br. at 32.
[22] Wilson challenges only the protection order's impact on the residential provisions.
[23] 100 Wash.App. 241, 247, 996 P.2d 654 (2000).
[24] Wilson also relies on In re Custody of Halls, 126 Wash.App. 599, 109 P.3d 15 (2005) and In re Marriage of Taddeo-Smith, 127 Wash.App. 400, 110 P.3d 1192 (2005). Both are similarly distinguishable. Halls involved an order of 10 years' duration expiring only after all children reached age of majority. Taddeo-Smith involved a question of voluntary surrender of legal custody. Neither case is helpful here.
[25] App. Br. at 36. Wilson argues at length that the modification proceedings were tainted by the protection order. No final order has yet been entered in those proceedings and they are not within the purview of this appeal.
[26] RCW 26.09.191(2)(n).
[27] See Smith v. Stillwell-Smith (In re Smith), 137 Wash.2d 1, 16, 969 P.2d 21 (1998) ("As with the state's police power the state may act pursuant to its parens patriae power only where a child has been harmed or where there is a threat of harm to a child. Both parens patriae power and police power provide the state with the authority to act to protect children lacking the guidance and protection of fit parents of their own, and although they may represent different perspectives, both contemplate harm.") (internal citation omitted).
[28] 107 Wash.App. 650, 655, 27 P.3d 1246 (2001).
[29] Wilson's reliance on State v. Sanford, 128 Wash.App. 280, 289, 115 P.3d 368 (2005) is misplaced for the same reasons.