IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SIERRA ALEECE BEATSON, | ) | |
| | ) | No.  32541-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KELLY SCOTT BEATSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Sierra Beatson served her father, Kelly Beatson, on the morning of the hearing for Sierra's petition for protection, under Washington's Domestic Violence Prevention Act (DVPA) ch. 26.50 RCW, against the father.  We must decide whether a respondent may waive the requirement, under the DVPA, of five days' notice before the hearing.  If we answer this question in the affirmative, we must decide whether Kelly Beatson waived the notice requirement.  We decide both questions in the positive.  We affirm the trial court's grant of Sierra Beatson's petition for a protection order.

FACTS

We first outline the facts as alleged by Sierra Beatson in her petition for an order of protection.  Her father, Kelly, denies any abuse of Sierra.  Both a superior court commissioner and a superior court judge found Sierra's version of the facts credible.

During a night in early January 2012 at the Beatsons' Colville home, Sierra's father, Kelly, screamed at her, threw her on the ground, and threatened to kill her for failing to shut the front door completely. Immediately after the episode, Sierra went to live temporarily with Kimberly Evans, the Beatsons' neighbor.

Sierra Beatson suffered other physical, mental, and emotional abuse from her father. Kelly Beatson would pin Sierra against a wall, slide her up the wall, and scream in her face, an activity called "wall flowering." Kelly meted excessive spanking that bruised Sierra. Kelly had anger outbursts during which he told Sierra and her siblings that they were worthless and that he hated them for monopolizing all his time and money. Kelly exhibited violence toward Sierra's mother and the aggression led to the mother fleeing and filing for divorce.

In January 2013, Kelly Beatson went to Florida to reconcile with Sierra's mother and his two younger children. Kelly left Sierra in the temporary custody of family friends, Michelle and Andrew Hancock. In February 2013, Kelly informed the Hancocks that he was leaving the country to travel and vacation until July. Kelly's news displeased the Hancocks because they found Kelly's actions deceitful.

While Sierra lived with Michelle and Andrew Hancock the couple overheard Kelly's angry outbursts toward Sierra through the telephone. Michelle read inappropriate and irrational text messages from Kelly to Sierra that inflicted great emotional stress on Sierra.

2

Michelle and Andrew Hancock cared for Sierra Beatson until July 2013, when Sierra went to live with her mother in Florida. Sierra returned to Kettle Falls in October 2013 and resided with Kimberly Evans, whom Kelly appointed as Sierra's guardian. At an unidentified time, Kelly Beatson moved to Alabama, where he continues to reside. Despite the distance between them, Kelly forwarded threats to Sierra and anyone who assisted her.

In early 2014, while she resided with Kimberly Evans, Sierra Beatson brought a Child in Need of Services (CHINS) petition in Stevens County. The court denied the petition. Kelly Beatson interpreted Sierra's CHINS petition as a violation of the agreement he made with her upon appointing Evans as Sierra's guardian. In response to the CHINS petition, Kelly filed an At-Risk-Youth petition, in which he claimed that Evans told him Sierra ran away twice and drank alcohol. On April 7, 2014, Kelly informed Sierra that he would return to Kettle Falls at the end of the school year.

## PROCEDURE

On April 10, 2014, Sierra Beatson filed her petition for a temporary order for protection, which the trial court granted and set a hearing thereon for April 17, 2014, at 1:00 p.m. The trial court also set a hearing for Kelly Beatson's At-Risk-Youth petition for this same day and time.

On April 17, 2014, Kelly Beatson arrived in Kettle Falls at around 2:00 a.m. At 9:30 a.m., a third party served Kelly at the Stevens County courthouse with Sierra's

3

petition for a protection order. At 1:28 p.m., the superior court commissioner called the case and recited the cause number for Sierra's petition for an order for protection. Both Sierra and Kelly then appeared before the court commissioner without legal counsel.

Because Kelly Beatson contends he did not effectively waive untimely notice, we quote lengthy portions of the hearing before the court commissioner. Upon calling the case, the court commissioner noticed the deficient service of process on Kelly. The following colloquy ensued:

> THE COURT: We are here because Ms. Beatson has filed a petition for an order for protection. The court granted an ex parte restraining order, or protection order, and Mr. Beatson, you are Mr. Beatson?
> MR. BEATSON: Yes ma'am.
> THE COURT: You were served it looks like today?
> MR. BEATSON: Yes ma'am, in the corridor over there.
> THE COURT: Okay. Alright, so you've been ordered to appear and show cause why the court should not grant a protection order against you, but you have not had timely service, so ---
> MR. BEATSON: No ma'am and may I apologize, I came 3200 miles and got in at 2:00 AM, and I'm a little tried [sic].
> THE COURT: Okay, are you prepared to go today, or would you like a continuance?
> MR. BEATSON: Ma'am I've done this before with my oldest daughter, I'm comfortable.
> THE COURT: And you've, you've read the allegations?
> MR. BEATSON: Yes ma'am.
> THE COURT: And you're prepared to answer those today?
> MR. BEATSON: Yes ma'am.

Report of Proceedings (RP) (Apr. 17, 2014) at 4.

After swearing in the parties, the court commissioner conducted an evidentiary hearing. The commissioner confirmed that Sierra Beatson did not wish to testify beyond

4

her testimony in her petition, and then the court commissioner addressed Kelly Beatson.

Kelly first appeared confused as to whether the court commissioner intended to address

the At-Risk-Youth petition or the domestic violence protection petition first. He later

focused on the domestic violence protection order.

> THE COURT: Okay. So Mr. Beatson you've been ordered to appear and show cause why this court should not enter a protection order against you, this is your opportunity. You may proceed.
> MR. BEATSON: Ma'am I'm a little confused there was a prior case first? Am I—am I getting something backwards?
> THE COURT: We have two files involving Ms. Beatson, one is an At-Risk-Youth petition, I haven't called that case yet, this is the protection order.
> MR. BEATSON: Oh I see, this is the second one, okay.
> THE COURT: This is the protection order matter.
> MR. BEATSON: I was kind of prepared for the first one, can you just give me a moment?
> THE COURT: Hmm hmmm.
> MR. BEATSON: It's the At-Risk-Youth, I'm sorry ma'am.
> THE COURT: That's alright, you haven't had any time to prepare for this, so.
> MR. BEATSON: No ma'am, and I have—
> THE COURT: But it takes a minute.
> MR. BEATSON: —three younger kids at home, that I have to be back by sundown, their mom and their dad. I lost my train of thought, I was ready for the other one, ma'am I'm sorry, hold on, I'm ready.

RP (Apr. 17, 2014) at 5-6.

Kelly Beatson provided the court commissioner with a binder of documents but

stated he had not made copies of the contents for Sierra because "I got in way too late."

RP (Apr. 17, 2014) at 6. The court commissioner informed Kelly that she could not

consider evidence that Kelly had not provided to Sierra.

5

No. 32541-5
*Beatson v. Beatson*

MR. BEATSON: ... Ma'am this is for you, may I hand it to you?

THE COURT: Well have you made copies for Ms. Beatson?

MR. BEATSON: No ma'am. I got in way too late.

THE COURT: Okay, so what—what's contained in here, what are you asking me to look at?

MR. BEATSON: It's information that as we go along I have mine, maybe we can work together. I am going to go to [the] timeline in the back and you should have a tab, and it's a call log of when these things started, and I'll have to trust your judgment of how far back I should go.

THE COURT: You just need to answer the allegations in the petition.

MR. BEATSON: Oh, the allegations are false ma'am.

THE COURT: Well you, okay, you can kind of walk me through it. Okay, it's alleged in early January 2012, that's where it starts.

MR. BEATSON: Let me, I have the other petition. If you'll just give me just another moment so I can reread it. I was served and I put it— the At-Risk-Youth, ma'am did I accidentally hand it to you with the—the petition for the—this is my third petition, so I'm getting a little confused.

THE COURT: I don't—I don't know there's a—what's in here?

MR. BEATSON: Does anybody just have a copy real quick I can just simply borrow? I had it right here. I don't know if I left at the library, I was served in court, I do remember the allegations.

THE COURT: I can hand this back to you, you can see.

MR. BEATSON: Thank you, ma'am.

THE COURT: I can read them to you. Does anybody have a copy, no?

MR. BEATSON: I just had it. I (inaudible) library. I'm sorry ma'am, I've had two eye surgeries as well, it's a little, things can jump around. But I do have it, if you can just bear with me.

THE COURT: Okay, would you mind if he took a look at that, okay. So just work from that.

MR. BEATSON: Okay, yeah it's, I was served this.

THE COURT: Okay.

MR. BEATSON: And what would the court like to hear from me?

THE COURT: Okay, she's made allegations—

MR. BEATSON: Yes ma'am.

THE COURT: —starting on page four, so you are here to answer to those allegations.

6

No. 32541-5
*Beatson v. Beatson*

RP (Apr. 17, 2014) at 6-8.

After reading into the record a portion of Sierra's petition for an order of protection, Kelly denied the allegations against him and stated that Sierra's true intention in bringing the petition was to prevent him from removing her from Kettle Falls.

> THE COURT: Okay, Mr. Beatson, I have read the petition, you told me you read the petition.
> MR. BEATSON: Yeah.
> THE COURT: So it's a starting point, you see how the allegations flow, there are specific allegations—
> MR. BEATSON: Yeah.
> THE COURT: —about your conduct, things you did, things you said.
> MR. BEATSON: They're not true, Your Honor.
> THE COURT: And so I need to hear your side of.
> MR. BEATSON: Ma'am, Sierra simply just doesn't want to move, I don't fault her for that. She's now, in my opinion, decided that she will follow her oldest sister and seven years of allegations through the Idaho courts, and hence decided that this was the way to go, when I've encouraged her to always stand up and tell the truth first.
> She's upset with me because I moved her last July. I allowed her to finish the school year in Kettle Falls. And the time period she's talking about, I was hospitalized with a rupture, and prior to that pneumonia. I had to get people to help me. You'll see in your documents, the support system that I have here—
> THE COURT: I don't have your documents, and—
> MR. BEATSON: Oh, bailiff—
> THE COURT: —actually no. Okay, I can't look at things you haven't provided for her to see.
> MR. BEATSON: Okay, sounds good.
> THE COURT: So you can tell me.
> MR. BEATSON: Sure.
> THE COURT: I mean hearsay is permissible. The rules of evidence don't really apply in these matters, but—

RP (Apr. 17, 2014) at 9-10.

7

The court commissioner asked Kelly Beatson about other allegations of domestic violence against Sierra Beatson's mother and sister. Kelly maintained that he had been charged but never convicted. Documents provided by Kelly, however, showed he agreed to a deferred prosecution on one charge of domestic violence in Oregon before the court dismissed the charge. Kelly again blamed the domestic violence petition on Sierra not wishing to move, and he accused Sierra of violating agreements. Later in his testimony, Kelly declared he was finished parenting and wanted to reunite Sierra with her siblings and mother.

> MR. BEATSON: The bottom line, Your Honor, I guess to get to the point is, she wants to stay in Kettle Falls. I—I can't fault her for that. This is not the way to do it, as me and Ms. Evans have discussed, and me and Mr. Flugel at the school have discussed. She notes that I don't allow abuse of the court system anymore. If you're going to come into court and put something on a document against me I will show up, and I came 3200 miles to do that, and left her three younger siblings at home.
>
> These are false, because the first things Sierra needs to remember, our renter in our studio next door was CPS, Jeff Studaben, (phonetic) great guy, our neighbor was Becky Berry (phonetic) CPS, great woman, good friend. If Sierra had a problem she could have simply walked over there, and said help me. Yes I did tell her when she is angry with me and I won't —my daughters get angry with me because I'm all about college, finishing school, not drinking, not staying out late. Second one, 15 years old, 16 years old, they start to think well dad rules are a little tough, next thing I know I'm in court. That's about where we're at.
>
> THE COURT: Have you ever had a domestic violence protection order—
>
> MR. BEATSON: Yes.
>
> THE COURT: —entered against you?
>
> MR. BEATSON: Yes ma'am.
>
> THE COURT: And who were—

MR. BEATSON: I was charged.

THE COURT: —the petitioners?

MR. BEATSON: Her mother.

THE COURT: Okay, and you keep referring to her older sister, did she obtain a domestic violence protection order against you as well?

MR. BEATSON: No ma'am. She tried and if you give me time I will look through the book, oh I have it right here actually, I got ready for that one. If Mr. Bailiff, if you will show my dismissal of the abuse and neglect from the State of Idaho, and the dismissal of the domestic violence against her mother from the State of Oregon, to the Judge please.

THE COURT: Okay, this was a deferred sentence on the DV.

MR. BEATSON: Right.

THE COURT: Okay, so that's different from the court dismissing it, okay.

MR. BEATSON: Okay, sure.

THE COURT: So don't present it in a way that it is not factually accurate.

MR. BEATSON: Sorry, I don't know the rules.

THE COURT: Okay, that was deferred. The court found that ---

MR. BEATSON: Yes ma'am.

THE COURT: —you committed DV, and you had—

MR. BEATSON: And dismissed it.

THE COURT: —to do your treatment and then that was a deferred.

MR. BEATSON: Yes ma'am.

THE COURT: So that's how that got dismissed.

MR. BEATSON: Yes ma'am.

THE COURT: Okay, this is an unsubstantiated report of child abuse and neglect pertaining to all—all of the children.

MR. BEATSON: And I have many more.

THE COURT: You have many more?

MR. BEATSON: Hmm hmmm.

THE COURT: Okay.

MR. BEATSON: Of charges.

THE COURT: Alright.

. . . .

THE COURT: So Mr. Beatson I need you to get to the point, okay. You've said you think your time as a parent has come to an end, what does that mean for this court right now?

MR. BEATSON: I have an option for Sierra, and me and the mother hopefully are going to sign an agreement when I get back. I want to reunite Sierra with her younger siblings, and I've told her mother that I will take a support role. I will give you money because I can't get money. I've tried. I'm broke. I had to fly standby, bus, everything here.

THE COURT: Okay.

MR. BEATSON: I want Sierra to reunite with her siblings and live with her mother, and I want her mother to finish the next seven years until William is 18. I've done seven years, I'm pretty worn out.

THE COURT: Okay, so are you opposing the entry of an order for protection, that's all I need to know.

MR. BEATSON: I'm opposing it ma'am. I'm sorry, I wasn't ready for this.

THE COURT: Okay. Alright, and you're opposing it. The burden here is on the petitioner, okay?

MR. BEATSON: Yes ma'am.

RP (Apr. 17, 2014) at 10-15.

The court commissioner then granted the petition for a protective order.

THE COURT: And the burden is by a preponderance of evidence, so just more likely than not. I realize you are ill-prepared, but you did choose to proceed today. You have quite an extensive court history, quite a CPS history. This demonstrates to the court that you have significant interpersonal difficulties. Your relationships are dysfunctional with your children, with your spouse, with significant people in your life. So all of the information that you brought to proffer a defense to show the court, and you say well I have multiple CPS reports that have come back unfounded.

MR. BEATSON: True.

THE COURT: My—my older daughter went to court to try to get protection form me and the court denied that, which I didn't see any proof of that actually.

MR. BEATSON: I can get—

THE COURT: But, and the domestic violence against her mother, that was dismissed. When in fact, no, that's a deferred sentence. It was found that you are a domestic violence perpetrator and you had to jump through certain hoops and when you did that the court then dismissed it. So I kind of fell off your record because everyone gets one shot at a deferred.

No. 32541-5
*Beatson v. Beatson*

MR. BEATSON: Sure.

THE COURT: Okay, so by preponderance of the evidence this court finds that this child has met her burden, and the court will grant an order for protection. This will be good for one year. You just told this court your plans, although there—it's irrelevant to the issuance of a protection order.

MR. BEATSON: Hmm hmmm.

THE COURT: You've told the court your plans, you don't live with this child. You live in another state. You don't plan to have this child live with you. You plan to have this child live with her mother. And this child is fearful of you based on your history, based on what she's witnessed you do to her mother, to her siblings, and what she's personally experienced from your behavior. So I am granting the order, and it has no bearing on custody. So whatever the other issues you're dealing with, this order is completely separate from that.

MR. BEATSON: Alright, and I strongly disagree. I raised the children—

RP (Apr. 17, 2014) at 15-17.

Kelly Beatson hired counsel and moved to revise the commissioner's order under RCW 2.24.050. Kelly furnished the superior court with an excerpt of the April 17, 2014 hearing transcript, rather than a complete transcript.

The superior court entertained oral argument on Kelly Beatson's motion to revise the order of protection. Kelly argued he lacked the requisite five days' notice of Sierra's petition and the short notice rendered the protection order invalid. Sierra observed that the transcript filed by Kelly of the April 17 hearing was incomplete in violation of Stevens County Local Court Rule 80. She argued that sufficient evidence supported the commissioner's decision to grant the protection order.

The superior court affirmed the commissioner's order for protection. In a written

11

ruling, the superior court declared: "The Commissioner's findings are supported by substantial evidence and the following findings are made after a *de novo* review of the record, including the hearing." Clerk's Papers (CP) at 55. The superior court concluded:

> A. Kelly Scott Beatson was not served timely with the Petition for Order for Protection and the Temporary Order for Protection and Notice of Hearing; he was served just prior to the hearing. But he waived any objection based on timely notice and proceeded with the hearing.
> B. The respondent, Kelly Scott Beatson, has committed domestic violence against his daughter, Sierra Aleece Beatson. RCW 26.50.020. The Commissioner's Order for Protection contained the standard Findings of Fact and conclusions of Law. RCW 26.50.035.
> C. The domestic violence he committed consisted of physical harm, assault by battery, and assault by infliction of fear and imminent physical harm between family members—the father and daughter. RCW 26.50.010(1); *Hecker v. Cortinas*, 110 Wn. App. 865, 820, 43 P.3d 50 (2002).
> D. Children who witness the abuse of a parent, here Sierra's mother, and fear the mother will suffer further injury are psychologically harmed by the violence and entitled to a protection order. *In re Marriage of Stewart*, 133 Wn. App. 545, 551, 137 P.3d 25 (2006).

CP at 56-57.

## LAW AND ANALYSIS

We need not address whether we review the court commissioner's rulings or the superior court's ruling because the outcome would remain the same. Kelly Beatson argues on appeal that (1) the DVPA supersedes the Washington Civil Rules and any waiver provision of the civil rules does not control, (2) waiver of notice is not possible under the DVPA, (3) even if it were, he did not waive his right to notice under the DVPA, and (4) because of the compressed due process afforded in a DVPA proceeding, a

court has a duty to sufficiently determine that a party's waiver of notice is intentional and adequate. Sierra Beatson argues that waiver under the DVPA does not violate a respondent's right to due process, nor is the DVPA inconsistent with the civil rules governing notice and waiver. We agree with Sierra.

We note that the superior court judge listened to the recording of the April 17, 2014 evidentiary hearing before the court commissioner. After reviewing the evidence de novo, the superior court judge entered his own findings of fact and conclusions of law. Kelly Beatson does not argue that he would have, if afforded more time to respond, presented any other evidence beyond the evidence he provided at the April 17 hearing. Therefore, one might surmise that any lack of timely notice of the order for protection hearing was cured by the later full superior court review. Nevertheless, Sierra Beatson does not raise this argument and we do not wish to decide an issue on appeal without the opportunity for each party to address the issue. This court does not review issues not argued, briefed, or supported with citation to authority. RAP 10.3(a); *Valente v. Bailey*, 74 Wn.2d 857, 858, 447 P.2d 589 (1968); *Avellaneda v. State*, 167 Wn. App. 474, 485 n.5, 273 P.3d 477 (2012). This court should not raise new issues without first giving the parties the chance to brief them. RAP 12.1. Therefore, we decide the appeal on other grounds.

Sierra Beatson correctly notes in her brief that Kelly Beatson does not challenge the DVPA as constitutionally invalid on its face. When a party alleges a statute fails to

13

afford due process, but the party does not make a facial challenge to the constitutionality of the statute, this court only addresses whether the party's due process rights were violated under the specific facts of his case. *Gourley v. Gourley*, 158 Wn.2d 460, 467, 145 P.3d 1185 (2006). Therefore, we only determine whether the DVPA procedure followed in this case violated Kelly Beatson's right to due process as applied to him. We first address whether one may waive notice requirements written in the DVPA.

## Applicability of CR 12

Kelly Beatson asks that we avoid reliance on any Washington Civil Rule that permits waiver of notice requirements. We do not believe any reliance on the civil rules is needed to affirm the lower court, but we conclude that at least CR 12 applies to the DVPA. Provisions of this rule support our holding that a party may waive lack of timely notice, during a DVPA proceeding.

CR 12(b) provides:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion . . . (4) insufficiency of process, (5) insufficiency of service of process . . .

In turn, CR 12(h)(1)(B) provides, in relevant part:

> A defense of . . . insufficiency of process, or insufficiency of service of process is waived . . . if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof.

The DVPA does not require a responsive pleading, but rather allows a respondent

14

to appear by testifying and presenting evidence at the hearing itself. *State v. Karas*, 108 Wn. App. 692, 700, 32 P.3d 1016 (2001). Therefore, a respondent in a DVPA proceeding has the opportunity to assert the defense both prior to and during the protection order hearing, as either an affirmative defense or a CR 12(b)(4) or (5) motion to dismiss. In addition, the court will on its own volition reset a hearing for a party that received untimely notice, thereby lessening the burden on a respondent to raise the defense. RCW 26.50.050, .085. The DVPA thus appears to relax CR 12's rule regarding the assertion of affirmative defenses. Nevertheless, no language in the DVPA preserves for a respondent a defense he could have but did not assert at the evidentiary hearing.

Kelly Beatson argues that the DVPA supersedes the rules for waiver in CR 12 because a domestic violence petition is considered a "special proceeding" under CR 81. Therefore, he maintains, the civil rule cannot be used as a basis for finding that a DVPA respondent waived his statutory right to five days' notice of a proceeding.

Kelly Beatson misreads CR 81(a). The rule provides, in relevant part: "Except where inconsistent with rules or statutes applicable to special proceedings, these rules shall govern all civil proceedings." DVPA hearings are "special proceedings" because the DVPA replaces the common law injunction with the statutory remedy of a domestic violence protection order. *Scheib v. Crosby*, 160 Wn. App. 345, 352, 249 P.3d 184 (2011). Nevertheless, no provision within the DVPA conflicts with CR 12. Therefore, waiver under CR 12(h) should apply under the DVPA as in any civil proceeding.

15

Common Law

Before analyzing the terms of the DVPA, we review principles of waiver under decisional law. Under the common law, waiver is the intentional abandonment or relinquishment of a known right. *Mid-Town Ltd. P'ship v. Preston*, 69 Wn. App. 227, 233, 848 P.2d 1268 (1993). Waiver must be shown by unequivocal acts or conduct showing an intent to waive, and the conduct must also be inconsistent with any intention other than to waive. *Dep't of Revenue v. Puget Sound Power & Light Co.*, 103 Wn.2d 501, 505, 694 P.2d 7 (1985).

Washington recognizes that in certain cases the common law doctrine of waiver will preclude assertion of insufficient service of process. *Butler v. Joy*, 116 Wn. App. 291, 296, 65 P.3d 671 (2003). For instance, if a party's assertion of the defense is inconsistent with his or her past actions in the legal proceeding, or if the party delays in asserting the defense, insufficient service of process may be waived as a matter of law. *King v. Snohomish County*, 146 Wn.2d 420, 424, 47 P.3d 563 (2002). In addition, this court has found a defective notice implicating due process as harmless beyond a reasonable doubt, when the complaining party subsequently appears and participates in a proceeding. *In re Welfare of H.S.*, 94 Wn. App. 511, 525-26, 973 P.2d 474 (1999); *In re A.W.*, 53 Wn. App. 22, 27, 765 P.2d 307 (1988). If defective service of process may be waived, untimely service of process should be deemed waivable.

No provision of the DVPA repudiates the common law doctrine of waiver. The

16

purpose and intent of the DVPA would be thwarted if a respondent could appear, litigate a protection order, lose, and then raise defective notice for the first time in a motion to revise or on appeal. Such a practice would grant DVPA respondents two trials on the merits and more protection than afforded in a typical civil proceeding. The practice would also frustrate the expedited processes available to DVPA petitioners.

## Due Process and the DVPA

Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The two fundamental requirements of due process are notice and a meaningful opportunity to be heard by a neutral decision maker. *State v. Karas*, 108 Wn. App. at 699 (2001). Due process is flexible and calls for such procedural protections as the particular situation demands. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). To determine what process is due in a particular situation, courts will consider three factors: (1) the private interest affected by the government action, (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value of additional procedural safeguards, and (3) the government's interest, including the burden that additional procedural safeguards would entail. *Mathews*, 424 U.S. at 335.

In this appeal, the private interest at issue is Kelly Beatson's right to make

decisions concerning the care, custody, and control of his daughter, Sierra Beatson, and to maintain contact with Sierra. *Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). Our Supreme Court has found that protection orders issued under the DVPA only temporarily affect this right, in part because they are only valid for one year. *Gourley v. Gourley*, 158 Wn.2d at 468 (2006). On the other hand, the State has a compelling interest in preventing domestic violence and abuse. *Gourley*, 158 Wn.2d at 468; LAWS OF 1993, ch. 350, § 1. As such, this court must balance the government and Kelly Beatson's competing interests by determining whether waiver of notice under the DVPA creates a risk of erroneously depriving a respondent of his right to parent. *Gourley*, 158 Wn.2d at 468.

RCW 26.50.050, our controlling statute, provides in relevant part:

> Upon receipt of the petition, the court shall order a hearing which shall be held not later than fourteen days from the date of the order. The court may schedule a hearing by telephone pursuant to local court rule, to reasonably accommodate a disability, or in exceptional circumstances to protect a petitioner from further acts of domestic violence . . . Except as provided in RCW 26.50.085 and 26.50.123, *personal service shall be made upon the respondent not less than five court days prior to the hearing.* If timely personal service cannot be made, *the court shall set a new hearing date and shall either require an additional attempt at obtaining personal service or permit service by publication as provided in RCW 26.50.085 or service by mail as provided in RCW 26.50.123. The court shall not require more than two attempts at obtaining personal service and shall permit service by publication or by mail* unless the petitioner requests additional time to attempt personal service.

(Emphasis added.) No provision of the DVPA explicitly prohibits a court from accepting

a respondent's waiver of the five-court-day notice requirement. *See* ch. 26.50 RCW.

Therefore, we construe the DVPA as a whole to determine whether allowing waiver of

notice is consistent with the legislature's intent in enacting the statute. *Christensen v.*

*Ellsworth*, 162 Wn.2d 365, 372-73, 173 P.3d 228 (2007). We also construe the purpose

behind the DVPA to determine if waiver of notice meets due process demands.

Washington courts have determined that the DVPA generally provides the

following procedural protections:

> (1) a petition to the court, accompanied by an affidavit setting forth facts under oath; (2) notice to the respondent within five days of the hearing; (3) a hearing before a judicial officer where the petitioner and respondent may testify; (4) a written order; (5) the opportunity to move for revision in superior court; (6) the opportunity to appeal; and (7) a one-year limitation on the protection order if it restrains the respondent from contacting minor children.

*Gourley*, 158 Wn.2d at 468-69.

The Washington legislature declared in detailed findings that the principal purpose

of the DVPA is to provide petitioners with a safe and effective mechanism for seeking

protection. LAWS OF 1993, ch. 350, § 1; LAWS OF 1992, ch. 111, § 1; LAWS OF 2008, ch.

287, § 1. In fact, our legislators amended RCW 26.50.050 to lessen the burden on

petitioners seeking to serve respondents who evade service of process:

> This act shall be known as the Rebecca Jane Griego act. Recent tragic events have demonstrated the need to find ways to make legal protections for domestic violence victims more accessible. On March 6, 2007, Rebecca Jane Griego, an employee at the University of Washington, had obtained a temporary protection order against the man who eventually

shot her and then himself in a murder-suicide on April 2, 2007. However, because her stalker had evaded the police and service of process, Ms. Griego had to return to court numerous times and did not have the opportunity to have a hearing for a permanent protection order. Under current court rules, which vary by court, if a process server fails to serve process after an unspecified number of times, process may be served by publication or by mail. Establishing greater uniformity in the service of process of petitions for orders for protection or modifications of protection orders in domestic violence cases may help to protect the safety of future domestic violence victims.

LAWS OF 2008, ch. 287, § 1. The amended legislation clarified that courts shall either require one additional attempt to serve a respondent if prior personal service was untimely or allow a petitioner to serve via mail or publication. LAWS OF 2008, ch. 287, § 2; RCW 26.50.085, .123. In practice, therefore, a court possesses discretion to forgo the personal notice requirement of RCW 26.50.050, if a respondent continues to evade service.

In enacting the DVPA, our legislature found:

[D]omestic violence is a problem of immense proportions affecting individuals as well as communities. Domestic violence has long been recognized as being at the core of other major social problems including child abuse, crimes of violence against person or property, juvenile delinquency, and alcohol and drug abuse. Domestic violence costs include the loss of lives as well as millions of dollars each year in the state of Washington for health care, absence from work, and services to children. The crisis is growing.

While the existing protection order process can be a valuable tool to increase safety for victims and to hold batterers accountable, specific problems in its use have become evident. Victims have difficulty completing the paperwork required; model forms have been modified to be inconsistent with statutory language; different forms create confusion for law enforcement agencies about the contents and enforceability of orders.

20

Refinements are needed so that victims have the easy, quick, and effective access to the court system envisioned at the time the protection order process was first created.

LAWS OF 1993, ch. 350, § 1; *see also* LAWS OF 1992, ch. 111, § 1.

Because waiver is consistent with our legislature's statements as to the purpose and intent of the DVPA, and because multiple other procedural protections exist that permit a respondent to challenge an improperly issued order for protection, we hold that waiver of notice does not violate a respondent's right to due process under the DVPA.

### Kelly Beatson's Waiver

Since we conclude that the law permits a respondent to a domestic violence protection petition to waive the notice requirement, we must next address whether Kelly Beatson waived this right. Kelly contends that, even if waiver is permissible, the court commissioner should have engaged in a more stringent and meaningful colloquy with him about his right to a week's notice and the implications of waiver. Sierra responds that the court commissioner sufficiently questioned and explained Kelly's rights to him such that her father's waiver was intentional and unequivocal. We hold that Kelly waived his right to assert deficient notice as a defense to imposition of the order for protection.

To repeat, Kelly Beatson holds a strong private interest in making decisions about his daughter's care and custody. *See Troxel*, 530 U.S. at 66. By the same token, the government has a strong interest in preventing domestic violence and abuse. *See* LAWS

21

OF 1993, ch. 350, § 1. Under chapter 26.50 RCW, a responding parent in a DVPA proceeding faces a low risk of erroneous deprivation of his right to parent, thanks to procedural safeguards built into the DVPA.

Despite not receiving five days' notice, Kelly Beatson appeared in court and unequivocally asserted to the court commissioner that he was ready to proceed. Kelly's later confusion and difficulty with separating the papers for the protection order and At-Risk-Youth petition establishes nothing. He may have been confused about the order of procedure, but he knew he was facing Sierra's request for a protection order. Kelly testified at length regarding the allegations in the protection order, and he told the court several times that he had read the allegations and was ready to proceed despite insufficient notice. He read some of the allegations again aloud as he responded to them. When he rambled off subject, the court commissioner reminded him that he needed to address Sierra's allegations of abuse.

Kelly Beatson maintains that his colloquy with the commissioner was insufficient to constitute knowing waiver of his right to notice. Nevertheless, he fails to specify what steps the court commissioner should have taken and what additional comments the commissioner should have uttered before accepting his waiver. The commissioner acknowledged the deficient notice and informed Kelly that she could provide him with a continuance in order to allow him more time to prepare. Kelly declined her offer. Kelly lived in Alabama and did not wish to return to Washington again for another hearing.

Kelly Beatson contends that he thought he was waiving his right to notice of the At-Risk-Youth petition, rather than the protection order petition. The record belies this contention. The court commissioner began the April 17 hearing by reading the cause number of the protection order petition and explaining, "We are here because Ms. Beatson has filed a petition for an order for protection." RP (Apr. 17, 2014) at 4. The commissioner immediately acknowledged deficient notice and asked Kelly if it was true that he had only just been served a copy of the petition on the day of the hearing. Kelly replied: "Yes ma'am, in the corridor over there." RP (Apr. 17, 2014) at 4. He then stated that he had "done this before with my oldest daughter," and that he had read the allegations in the protection order petition and was ready to proceed. RP (Apr. 17, 2014) at 4. There was a brief point in the hearing where Kelly became confused about which petition the commissioner was addressing first, but the commissioner clarified the order in which they were addressing the issues.

Kelly Beatson knowingly waived his right to 5-days' notice.

## Attorney Fees

Both Kelly Beatson and Sierra Beatson request attorney fees and costs under the DVPA. RAP 18.1(a) permits a party to recover attorney fees on appeal if an applicable law grants the party that right and the party includes a request for fees in its brief. RCW 26.50.060(1)(g) provides:

> Upon notice and after hearing, the court may provide relief as

23

follows . . . Require the respondent to pay the administrative court costs and service fees, as established by the county or municipality incurring the expense and to reimburse the petitioner for costs incurred in bringing the action, including reasonable attorneys' fees.

This provision also applies to appellate attorney fees and costs. *See Gourley*, 158 Wn.2d at 470; *Scheib*, 160 Wn. App. at 353.

We award Sierra Beatson, as the prevailing party, attorney fees and costs on appeal.

## CONCLUSIONS

We reject Kelly Beatson's contention that he could not and did not waive the five day notice requirement for a domestic violence petition hearing. We affirm the order of protection entered in favor of Sierra Beatson against Kelly. We grant Sierra reasonable attorney fees and costs on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____       _____
Siddoway, C.J.                   Lawrence-Berrey, J.

24