# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of:<br>E.F., | No. 54047-9-II |
| STATE OF WASHINGTON, | |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| E.F., | |
| Appellant. | |

SUTTER, A.C.J. — EF appeals from a civil commitment order committing him to Western State Hospital for up to 180 days of involuntary inpatient mental health treatment. He argues that the evidence was insufficient to establish that he was gravely disabled because the evidence "demonstrates that he is capable of making a rational decision regarding his mental health once released from" the hospital.[1] Br. of Appellant at 11. We disagree, and affirm.

---

[1] EF appeals from only one of the two grounds supporting the commitment order that has since expired. Because EF challenges his confinement based on only one of the two grounds supporting his involuntary commitment, we must affirm the involuntary commitment based on the unchallenged ground. But, despite this, this appeal is not moot because an individual's prior involuntary commitment orders and grave disability findings have potential collateral consequences. *In re Det. of M.K.*, 168 Wn. App. 621, 629, 279 P.3d 897 (2012); RCW 71.05.212(3) (respondent's current symptoms and behaviors may be considered in conjunction "with symptoms or behavior which preceded and led to a past incident of involuntary hospitalization, severe deterioration, or one or more violent acts").

FACTS

EF is a 22-year-old man who has been diagnosed with schizophrenia. The State charged EF with two counts of third degree assault based on an incident that occurred at Skagit Valley Hospital during which EF physically attacked another patient and the registered nurse who attempted to assist the other patient. On July 22, 2019, the criminal court dismissed the charges and referred EF for possible civil commitment after finding that he was not competent to stand trial[2] and was unlikely to regain competency.

Three days later, EF's treatment providers petitioned for an order allowing for 180 days of involuntary treatment under former RCW 71.05.280(3) and (4) (2018). They alleged that (1) EF was gravely disabled,[3] and (2) EF had been found incompetent to stand trial; the felony charges had been dismissed; and that, as a result of a mental disorder, he presented "a substantial likelihood of repeating similar acts."[4] Clerk's Papers (CP) at 2. At the hearing before a commissioner, forensic evaluator Dr. Virginia Klophause and the registered nurse victim testified for the petitioners. EF did not present any evidence.

The registered nurse testified about EF assaulting her when she intervened while EF was assaulting another patient while in Skagit Valley Hospital.

Klophause testified that EF had been diagnosed with schizophrenia, that he had "a history of delusional beliefs," and that he had displayed behaviors "suggesting the presence of

---

[2] The criminal court had previously referred EF to Western State Hospital for a competency evaluation on March 4, 2019.

[3] Former RCW 71.05.280(4).

[4] Former RCW 71.05.280(3).

hallucinations." Verbatim Report of Proceedings (Aug. 8, 2019) (VRP) at 30. Klophause further testified that during his current confinement at Western State, EF had engaged "assaultive behavior" towards staff and peers nine times prior to the petition being filed. RP (Aug. 8, 2019) at 32. These incidents were "frequently unprovoked." VRP at 32. The last incident occurred on August 2, 2019. Klophause testified that EF's assaultive behaviors decreased "with improved medication adherence." VRP at 33.

Klophause also testified that EF "did not describe any concrete plan for obtaining his medication in the community," and opined "that [EF] would discontinue his medication" if he left the hospital. VRP at 33. Klophause noted that EF could not name his medications, did not "demonstrate any insight regarding the need for medications," and had asserted that the medications were not helpful for him and "that nothing would change if he stopped taking his medications." VRP at 34. Although EF was able to identify a "comprehensive center in Skagit County" where he could apparently obtain his medications, EF made inconsistent statements as to whether he had a doctor at the comprehensive center or whether he had been there before. Ultimately, Klophause opined that, if released, EF had no clear plan for how he would get to the comprehensive center or how to obtain treatment at the comprehensive center.

Klophause also testified that although EF stated he could stay with friends if he was released from the hospital, EF would not provide a verifiable plan regarding where he would stay. And, when asked about his financial support, stated "that he expected to be receiving two thousand dollars weekly," but he was unable to identify the source of this income. VRP at 34-35.

As to EF's prior mental health history, Klophause testified that EF had previously received "community based treatment" in Skagit County, he had been hospitalized more than once at

3

Eastern State Hospital, and he had been hospitalized at Western State for competency restoration. VRP at 36.

After hearing this testimony, the commissioner granted the petition, concluding that the petitioners had establish both that EF was gravely disabled and that EF had been found incompetent to stand trial; the felony charges had been dismissed; and that, as a result of a mental disorder, he presented a substantial likelihood of repeating similar acts. Because ER challenges only the gravely disabled finding, we address this below. The commissioner found that EF had been diagnosed with schizophrenia and that EF, "as a result of a mental disorder[,] manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over actions, is not receiving such case as is essential for health and safety." CP at 25. Thus, the commissioner concluded that EF was or continued to be gravely disabled and ordered up to 180 days of involuntary treatment.

EF moved for revision of the commissioner's decision under RCW 2.24.050. He asserted, among other claims, that the petitioners had failed to prove by clear, cogent, and convincing evidence that he continued to be gravely disabled because they did not prove a substantial risk of danger of serious physical harm due to his failure to provide for his essential health and safety needs. The superior court denied the motion for revision.

EF appeals.

## ANALYSIS

EF argues that the gravely disabled finding is not supported by substantial evidence because the evidence was insufficient to establish that he would be unable to make rational decisions with respect to his need for treatment. We disagree.

4

I. LEGAL PRINCIPLES

"On appeal, this court reviews the superior court's ruling, not the commissioner's." *Maldonado v. Maldonado*, 197 Wn. App. 779, 789, 391 P.3d 546, (2017) (citing *In re Marriage of Stewart*, 133 Wn. App. 545, 550, 137 P.3d 25 (2006)). Because the superior court denied EF's motion to revise the commissioner's ruling and did not issue its own findings of fact and conclusions of law, the superior court adopted the commissioner's decision. *Maldonado*, 197 Wn. App. at 789 (citing *In re Marriage of Williams*, 156 Wn. App. 22, 27-28, 232 P.3d 573 (2010)).

In a civil commitment proceeding seeking 180 days of involuntary treatment, the petitioners have the burden of proving that the respondent is gravely disabled by clear, cogent, and convincing evidence. *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986). Under this standard, the petitioners must show that it is highly probable that the respondent is gravely disabled. *Labelle*, 107 Wn.2d at 209.

We "will not disturb the trial court's findings of 'grave disability' if [the findings are] supported by substantial evidence which the lower court could reasonably have found to be clear, cogent[,] and convincing." *LaBelle*, 107 Wn.2d at 209. "'Substantial evidence is evidence that is in sufficient quantum to persuade a fair-minded person of the truth of the declared premise.'" *In re Det. of T.C.*, 11 Wn. App. 2d 51, 56, 450 P.3d 1230 (2019) (internal quotation omitted) (quoting *In re Det. of A.S.*, 91 Wn. App. 146, 162, 955 P.2d 836 (1998)).

## II. GRAVELY DISABLED

An individual may be involuntarily committed for mental health treatment if, as a result of a mental disorder,[5] the individual is gravely disabled. *LaBelle*, 107 Wn.2d at 201-202. At the time of the hearing, former RCW 71.05.020(21) (2019) provided two definitions of "gravely disabled." The superior court relied on the definition in former RCW 71.05.020(21)(b), which required the petitioners to prove that EF "manifest[ed] severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety" by clear, cogent, and convincing evidence. Former RCW 71.05.020(21)(b); *LaBelle*, 107 Wn.2d at 205, 209).

Subsection (21)(b) was intended to address respondents/patients who experience "'decompensation.'" *LaBelle*, 107 Wn.2d at 206. This subsection

> permits the State to treat involuntarily those discharged patients who, after a period of time in the community, drop out of therapy or stop taking their prescribed medication and exhibit "rapid deterioration in their ability to function independently,"

without requiring those individuals to decompensate to the point that they were in danger of serious harm from their inability to care for themselves. *LaBelle*, 107 Wn.2d at 206 (quoting Durham & LaFond, *The Empirical Consequences and Policy Implications of Broadening the Statutory Criteria for Civil Commitment*, 3 Yale L. & Pol'y Rev. 395 (1985)).

---

[5] EF does not dispute that any potential grave disability was the result of a mental disorder.

The "evidence must include recent proof of significant loss of cognitive or volitional control. In addition, the evidence must reveal a factual basis for concluding that the individual is not receiving or would not receive, if released, such care as is essential for his or her health or safety." *LaBelle*, 107 Wn.2d at 208. The care must be essential to the respondent's health or safety, not merely preferred, beneficial, or in his best interest. *LaBelle*, 107 Wn.2d at 208. Additionally,

> [i]mplicit in the definition of gravely disabled . . . is a requirement that the individual is *unable*, because of severe deterioration of mental functioning, *to make a rational decision with respect to his need for treatment*. This requirement is necessary to ensure that a causal nexus exists between proof of severe deterioration in routine functioning and proof that the person so affected is not receiving such care as is essential for his or her health or safety.

*LaBelle*, 107 Wn. 2d at 208 (some emphasis added, internal quotation marks omitted). A key component in this analysis is whether the respondent is able to "form realistic plans for taking care of himself outside the hospital setting." *LaBelle*, 107 Wn.2d at 210.

EF argues that the petitioners failed to prove by clear, cogent, and convincing evidence that EF was incapable of making rational decisions regarding his care. We disagree because Klophause's testimony established that EF was unable to make rational decisions with respect to his need for treatment or to form realistic plans or care upon release.

Klophause testified that EF's violent behaviors decreased "with improved medication adherence." VRP at 33. But, despite this improvement, EF did not "demonstrate any insight regarding the need for medications" and asserted that the medications were not helpful and "that nothing would change if he stopped taking his medications." VRP at 34. Without insight into his condition and an understanding of his need for medication, EF could not make rational decisions

7

regarding his need for treatment. Additionally, EF's history of mental health related hospitalizations[6] at a young age and his history of assaultive behavior when not medicated also demonstrate that EF frequently decompensated to the point where he became assaultive. This decompensation places the safety of others and EF at risk if EF is not in a controlled environment.

Furthermore, Klophause's testimony provided evidence that EF did not have a realistic plan for caring for himself upon release. Although EF asserted that he knew of a place he could obtain treatment (the comprehensive center in Skagit County), Klophause testified that EF could not verify that he had been treated there before, that he knew how to obtain treatment at that facility, or even that he had a realistic means of getting to the treatment facility. Thus, although EF may have stated that he would seek outpatient care if released, EF could not articulate a realistic plan.

Based on this evidence, we conclude that the gravely disabled finding was supported by evidence that was clear, cogent, and convincing. Accordingly, we affirm.

---

[6] Under former RCW 71.05.012 (1997), we may consider EF's "prior history or pattern of repeated hospitalizations or law enforcement interventions due to decompensation" when "determining whether [EF] would receive, if released, such case as is essential for his . . . health or safety."

No. 54047-9-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, A.C.J.

We concur:

MAXA, J.

CRUSER, J.